STATE OF MISSOURI, Respondent, v. T. L. WRIGHT, Appellant.

Springfield Court of Appeals, January 18, 1919.

1. **NAVIGABLE WATERS**: Riparian Rights: Rafts. A natural stream, capable of floating rafts of logs and timber, is navigable, in the sense that even a riparian owner has no right to obstruct it, and the rights of riparian owners of adjacent soil are subject to the easement of the public in floating rafts without injury to the soil.

2. **LOGS AND LOGGING**: "Navigable Stream:" Offenses: Rafts: Cutting Adrift. A riparian owner who in violation of Revised Statutes 1909, section 4620, cuts adrift a raft of plank, lumber and railroad ties moored by a rope to an island to which defendant had title, situated in a stream "navigable" in the sense that it is a public highway for the floating of lumber and ties, is not entitled to a direction of acquittal.

3. **INDICTMENT AND INFORMATION**: Verification of Information. That an information for cutting adrift a raft of plank, lumber, and railroad ties in violation of Revised Statutes 1909, section 4620, verified by the prosecuting attorney on information and belief, is also defectively verified by a third party, does not make it bad, within sections 5057, 5058, relating to verification of information.

4. ———: ———. In prosecution for cutting adrift a raft of lumber and railroad ties in violation of Revised Statutes 1909, section 4620, an owner of the raft, who saw it after it was cut adrift, was competent to verify the information under sections 5057, 5058, although he did not see defendant cut the raft loose.

5. **LOGS AND LOGGING**: Offenses: Cutting Adrift Rafts: Doctrine of Ejusdem Generis. Under Revised Statutes 1909, section 4620, denouncing the cutting adrift of a "raft of wood, plank, boards or other lumber," conviction may be had for setting adrift a raft of railroad crossties and switch ties, under the doctrine of *ejusdem generis*.

Appeal from Ripley County Circuit Court.—*Hon. J. P. Foard*, Judge.

AFFIRMED.

*Chas. B. Butler* for appellant.

*Geo. D. Sloan* for respondent.

STURGIS, P. J.—The defendant was convicted of violating Section 4620, Revised Statutes 1909, the information of the prosecuting attorney charging that defendant unlawfully, willfully and maliciously cut loose and set adrift a raft of plank, lumber and railroad ties, the property of G. S. Limes and J. A. Limes, composing the partnership of J. A. Limes Tie & Timber Company. Defendant's punishment was fixed at a fine of $50 and he took due and proper steps to appeal the case to this court.

The evidence clearly shows that the Limes Tie and Timber Co. was engaged in the tie and timber business on Current River, floating ties and timber down that river to the town of Doniphan, a railroad point, where same were loaded on cars and shipped to market. Said company had been in the business for some time and was doing quite an extensive business. The T. L. Wright Lumber Company, of which the defendant was president, was engaged in a like business and there was sharp rivalry between the two companies. On the occasion in question the Limes Company had floated a raft of railroad cross and switch ties down Current River and, reaching the town of Doniphan in the evening, tied up the raft for the night by fastening the same with a rope to a tree standing on the bank of a small island near the east side of the river and a short distance above the ford of the public road crossing the river and leading into the town. Ties and timber so floated down the river were usually taken out of the river at this ford. The tie raft, when tied to this tree was yet out in the river and was fastened in other ways. After dark that evening the defendant went to this island and cut the rope fastening the tie raft to this tree on the bank, resulting in the raft becoming loose and drifting down the river and lodging on the opposite side in a somewhat damaged condition.

The defendant testified in his own behalf and frankly admitted that he cut loose and set adrift this tie raft on the occasion mentioned. The defendant sought to justify his action in so doing on the ground that the T. L. Wright Lumber Company, of which he was president, was the owner of the island on the bank of which stood the tree to which the Limes Company tied its tie raft. He complained that the Limes Company and others had previously done some damage to the island by using same as an anchor in tying up timber rafts or rather in landing thereon such ties and timber. For this reason the Wright Lumber Company had forbidden the Limes Company and others to anchor rafts to this island and posted notices thereon to this effect. It is shown, however, that on this occasion the raft was in the river and nothing was done except to tie one end of a rope to a tree standing on the bank. There is abundant evidence from which the jury could find that defendant's real purpose in forbidding the tying of rafts to this island and in cutting this one loose was to embarrass the Limes Company in its business. In fact defendant avowed his intention to repeat this act of cutting such rafts loose every time one was anchored to this island.

The island in question is shown to be owned by the Wright Company and was so adjudicated in Wright Lumber Company v. Ripley County, 270 Mo. 121, 136, 192 S. W. 996, where the court also held that Current River is a non-navigable stream in the sense that the fee title of a riparian landowner extended to the middle of the stream. This river is shown, however, to be "a pretty good sized little stream" as one witness said and is extensively used by small boats and river craft as well as for rafting logs and all kinds of timber products to market. We take judicial knowledge also, *in a way*, that it is a fine fishing stream and that boats are used for that purpose also. This court in Weller v. Lumber Company, 176 Mo. App. 243, 256, 161 S. W. 853, took notice that this same river is navigable in the sense that it is "capable of transporting commerce in

any manner in which commerce is ordinarily conducted in a navigable or floatable stream and *is a public highway.*" In McKinney v. Northcutt, 114 Mo. App. 146, 161, 89 S. W. 351, the court held that a natural stream of water capable of being used for floating rafts of logs, timber or ties to market is navigable in the sense that it is a public highway which no one, even a riparian owner, has a right to obstruct "and the rights of the riparian owners to the soil adjacent to and underlying the bed of such stream are subject to this right of easement in the public which rests on the necessities of commerce;" that the public "had a right to occupy the stream in floating ties to market without inflicting injury upon the adjacent property." In Northcut v. Lumber Co., 187 Mo. App. 386, 389, 173 S. W. 15, this court upheld the right of the public to use streams smaller than Current River as public highways for floating ties and timber and that a person so using it would not be liable for damage to a riparian owner except on proof of negligence in the use thereof.

It was doubtless on this theory of the right of the public to use natural waterways like Current River for transporting such commerce as same are capable of transporting that the Legislature enacted, for the protection of such commerce, hection 4620, Revised Statutes 1909, making it a misdemeanor for anyone to wilfully and maliciously burn, injure or destroy any pile or raft of wood, plank, boards or other lumber, or cut loose, or set adrift any such raft or cut, injure, sink or set adrift any boat or other vessel being the property of another. This statute is plainly intended to protect commerce on such water courses and to subject the rights of riparian owners of land to the easement of using such streams as public highways. No one would claim that a riparian owner could burn or destroy a raft of ties or lumber or a boat which for convenience or necessity had been anchored to the shore, nor can he be allowed to, at will, cut same loose and set it adrift. We hold, therefore, that defendant was not entitled to an instruction directing his acquittal.

Some other questions are raised which are technical in their nature. It is said that the information is bad because not based on the affidavit of a person who has knowledge of the commission of the offense and is competent to testify as a witness in the case. This informaton was filed in the circuit court and is governed in this respect by sections 5057 and 5058, Revised Statutes 1909. The information is stated to be based upon the affidavit of G. S. Limes filed therewith and upon the information and belief of the prosecuting attorney. It is signed and verified by the oath of the prosecuting attorney as the statute requires and the fact that an affidavit of another party was also filed therewith makes no difference. [State v. Rotter, 193 Mo. App. 110, 113, 181 S. W. 1158.] Moreover, the person making the affidavit, G. S. Limes, is shown to be a witness competent to testify in the case. It is true he did not see the defendant cut the raft loose, but he saw the same after it had drifted and lodged on the other side of the river and testified as to the ownership of the ties and other material facts in the case. He was one of the owners of the ties and to say that he was not a person competent to make the affidavit because he did not know *all* the facts necehsary to a conviction is not the meaning of the statute.

We do not agree that the cutting loose and setting adrift a raft of railroad cross ties and switch ties is not within the meaning of the statute. The statutory words are "raft of wood, plank, boards or other lumber." It may be true that when this statute was first enacted, it being a very old one, railroad ties were not in use. Nor indeed were fence posts for stringing barbed wire thereon then in use. New industries naturally call for new uses of timber in new forms and the new form of such timber may take a distinct name. It is shown that these ties are sawed timbers approximately six by eight inches and eight feet long. It may be true that railroads and timber dealers may regard cross ties as a distinct kind of timbers and do not class same as plank, boards or lumber. Such may be true also of

fence posts, bridge timbers, telegraph poles, etc. To hold, however, that, because a particular kind and use of timber has become so extensive as to give it a distinct name and class, this excludes it from the purview of this statute, renders the statute almost nugatory. Railroad ties are certainly wood and lumber is the manufactured product of logs. [25 Cyc. 1546.] Had the pleader designated this raft as being composed of wood and lumber of the dimensions of six inches thick, eight inches wide and eight feet long commonly called railroad ties, it would be apparent that it conformed to the statute. We recognize of course that criminal statutes must be strictly construed and that the doctrine of *ejusdem generis* applies to restrict general words of a statute to things of a like kind with the particular words preceding, but we think that railroad ties sawed from logs are of the same class as plank and boards sawed therefrom and differing only in dimensions.

The defendant appears to have been fairly and properly tried and the judgment is affirmed.

*Bradley* and *Farrington, JJ.,* concur.