HOBART-LEE TIE COMPANY, a Corporation, Respondent, v. J. F. GRABNER, Appellant.

Springfield Court of Appeals, March 27, 1920.

1. **NAVIGABLE WATERS**: Title of Owner on Stream Navigable Only for Floating Logs Extends to Thread of Stream. If a stream is nonnavigable in the sense that the State or government has not the title to the river bed, then the adjoining landowners' ownership runs to the thread of the stream, and such ownership is subservient only to the rights of the public to use the stream as a highway upon which to float logs, ties, and such other merchandise as the volume of water will carry, and to tie up to banks for repairs and to do anything thereon incidental to travel.

2. **EVIDENCE**: Court Must Take Judicial Notice of Navigability of Streams. The courts of the State are bound to take judicial notice of the navigable streams of the State, when used in the broad sense, where the bed of river is retained in the public and not deeded to the adjoining landowners.

Hobart-Lee Tie Co. v. Grabner.

3. ———: **Court Not Bound by Admissions as to Facts of Which it Takes Judicial Notice.** Admission by both parties to an action that a certain stream was navigable would not, and could not, bind the courts in determining the issues in the case, the court being bound to take judicial notice of the navigable streams of the State.

4. ———: **Court Judicially Knows That Gasconade River is Not Navigable Near Source Except For Floating Logs.** The court will take judicial notice of the fact that Gasconade River is not navigable near its source by reason of the topography of the country in the Ozark uplift, although navigable in the sense that it is capable of floating logs, and that adjoining landowners' ownership runs to the thread of the stream.

5. **NAVIGABLE WATERS: Patents For Land Along Streams Include Land Between Meander Line and Thread of River.** When the United States surveyed land along banks of a navigable river and sold and conveyed such land by subdivisions, its patents conveyed the title to all the lands lying between the meandering line and the thread of the river, unless previous to the issuance and delivery of such patent it had also surveyed such lands as government subdivisions or had expressly reserved them when so surveyed.

6. ———: **Patentee of Government Land Entitled to Land Restored by Accretion.** In a case where land is patented to a riparian owner by the government, and part of it is washed away and it is afterwards restored by accretion, the riparian owner acquires the title thereto.

7. ———: **Right to Float Logs Does Not Include Right to Land and Haul Overland to a Highway.** The right to use a stream as a highway for floating logs, the adjoining owners' ownership running to the thread of the stream, did not include the right to land and haul logs or ties over the land of a riparian owner to a highway.

Appeal from Circuit Court of Pulaski County.—*Hon. L. B. Woodside,* Judge.

AFFIRMED.

*Reed, Davis & Reed* and *Lamar & Lamar* for appellant.

(1) We apprehend there will be no dispute as to the law, but we cite the following authorities in this

206 M. A.—7

State which settle the proposition that the riparian owner owns only to the low water mark and not to the middle of the stream of a navigable river in this State. Cooley v. Golden, 117 Mo. 33; Rees v. McDaniel, 115 Mo. 145; Naylor v. Cox, 114 Mo. 232, l. c. 237; Benson v. Morrow, 61 Mo. 345, l. c. 349; Cox v. Arnold, 129 Mo. 337; Perkins v. Adams, 132 Mo. 131, l. c. 139; State ex rel. v. Longfellow, 169 Mo. 109, l. c. 126. (2) He does not acquire title to an island although the island may afterward connect with the shore by a process of filling up or by deposits by the island and the shore. Perkins v. Adams, 132 Mo. 131, 139; Naylor v. Cox, 114 Mo. 233, 237; Cox v. Arnold, 129 Mo. 337; State ex rel. v. Longfellow, 169 Mo. 109, 126; Cooley v. Golden, 117 Mo. 48; Moore v. Farmer, 156 Mo. 33, 47; Frank v. Golden, 193 Mo. 390, 395; McBain v. Johnson, 155 Mo. 141; Hahn v. Dawson, 134 Mo. 581, 590 and 591; Chinn v. Naylor, 182 Mo. 583, 597. (3) When the stream is capable of being used for floating rafts or logs, the public easement extends to the use of its banks when necessary for such purpose. 25 Cyc., page 1568, sec. 2, Note 16 and cases cited: 17 R. C. L., sec. 56, page 1135. (4) The question of whether or not a stream is navigable, is a question of fact to be proven just as any other fact. 29th Cyc. 273; McKinney v. Northcut, 114 Mo. App. 146, 159; Weller v. Mo. Lumber & Mining Co., 176 Mo. App. 243, 256; United States v. Rio Grande Dam Co., 19 U. S. Supreme Court Reporter 770, 773; Falls Mfg. Co. v. River Improvement Co., 58 N. W. 257, 261; Mintzer v. North American Distilling Co., 242 Fed. 533, 559; Hale v. Record, 146, Pac. 587; Idaho Northern R. R. v. Lumber Co., 119 Pac. 1098; City of S. F. v. Main, 137 Pac. 281; Mayor of City v. Harlow, 853, 856. (5) Courts take judicial notice of the navigability of tide waters and such particular rivers of the country on which navigation is carried on to such an extent that it becomes a matter of common knowledge, such as the Mississippi, the Ohio, and the Missouri, but as to all other streams and waters their

navigability is a question of fact. 29th Cyc. 293 G., cases cited, note 23; McKinney v. Northcutt, 114 Mo. App. 146, 160; 19 Cyc. 862, cases cited, note 38; United States v. Rio Grande Dam Co., 19 U. S. Supreme Court Reporter 770, 773. (6) If navigable in fact, then the bar or bed of the river between high and low water mark cannot be leased to any one person or ocrporation to the exclusion of the public. The ownership of the land to low water mark by the riparian owner is a qualified right, and is subordinate to the superior rights of the public, not only to navigate the water, but to have access thereto by the use of the ground between high and low water mark. This is expressly held in the following cases: Churchill v. Kinsbury, 174 Pac. 329, 330; Freeland v. Penn. R. R., 47 Atl. 745; Acuino v. Riegelman, 171 N. Y. Supp. 716, 718; 29 Cyc. 305, note 3 and cases; Gniadck v. N. W. Improvement Co., 75 N. W. 894; U. S. v. McGlindy, 5 Alaska 4; U. S. v. Mackey, 214 F. 137; Dincan v. Keerman, 192 S. W. 603; State ex rel. v. Deesch, 162 N. W. 365; Anderson v. Ray, 165 N. W. 591, 594; Symines v. Prairie Co., 50 So. 223; State ex rel. v. District Court, 137 N. W. 298; Lenoir County v. Crabtree, 74 S. D. 105, 106.

*Frank H. Farris* for respondent.

(1) There is no dispute that the riparian owner of land adjacent to navigable streams owns the land to the water's edge, and the water's edge means the low water mark. State ex rel. v. Longfellow, 169 Mo. 128, and cases cited. (2) It is also true that every sand nucleus or sand bar is not in law an island, even though it be surrounded by water; it may be the nucleus for the formation of an island, but it takes more than a mere sand head to constitute a legal island. Frank v. Goddin, 193 Mo. 395. (3) There is a difference between a navigable stream and a stream as a public highway; a navigable stream is one actually capable of floating and of permitting the passage of or-

dinary boats upon the bosom of its waters. State ex
rel. v. Taylor, 224 Mo. 397; Wright Lumber Company
v. Ripley County, 192 S. W. 998. (4) The Congress of
the United States has never declared the Gasconade
River to be a navigable stream. It has declared as fol-
lows: "The Mississippi and Missouri Rivers, and all
navigable streams flowing into them, shall be public
highways, and in all cases where the opposite banks of
any streams not navigable shall belong to different per-
sons, the stream and the bed thereof shall become com-
mon to both." United States Statutes at Large, 1789-
1799, page 468, section 9. By the Act of Congress mak-
ing Missouri a territory, it was provided that the Mis-
sissippi River and the navigable rivers and waters
leading into the same shall be common highways.
3 United States Statutes at Large, page 546 section 2.
(5) A stream capable of transporting commerce in any
manner in which such commerce is ordinarily con-
ducted, is a navigable or floatable stream, and is a public
highway. Weller v. Lumber Company, 176 Mo. App.
256. A natural stream of water capable of being used
for floating rafts or logs, timber or ties, to market, is
navigable in the sense that it is a public highway, which
nobody, even the riparian owner, has a right to ob-
struct, and the rights of the riparian owners of the soil
adjacent to and underlying the bed of such stream,
are subject to this right and easment in the public, and
the public has a right to occupy the stream in floating
his ties to market without inflicting injury upon the ad-
jacent property. And this includes the right to tie
rafts of logs or timber to the adjacent bank where the
same is done without injury to the riparian owner, but
such right or easement does not give a license or privi-
lege to the user of the stream for such commercial pur-
poses to load his commerce or to carry the same over
the adjacent lands. State v. Wright, 208 S. W. 150.

FARRINGTON J.—The plaintiff, respondent, in-
stituted an action to enjoin the defendant, appellant,
from landing ties at a certain point on the Gasconade

River in Pulaski County, Missouri. One C. J. Miller owns the land at the point in question on the north side of the river, and prior to the institution of this suit had executed a lease to plaintiff purporting to give it the right to tie up rafts to land and draw ties at the points on the land of said Miller. The trial court, after hearing the evidence, made perpetual a temporary writ of injunction which had been issued on the filing of the cause. The plaintiff and defendant were both engaged in the business of buying ties and floating them down the Gasconade river to the point concerning which this controversy arises. From the evidence it appears that the Gasconade river, as it ran at the time of the trial, made a bend to the south, beginning at a point on Miller's land which plaintiff had leased, the thread or current of the stream veers off to the south, making a large bend to the south and east. The evidence clearly shows that originally the north bank of the river was some distance north of its present north bank, or place where the land and water meet now when the river is low or at a normal stage. In this bend which the river has made there was formed a gravel bar or, as appellant designated it, an island. The evidence shows that a good many years ago a small tow-head was formed in the stream which afterwards grew to the proportion of a sand bar several hundred feet long, and that for a time water ran on both sides of this sand bar, that is, one part of the stream running between this tow-head or sand bar and Miller's land, and the other part of the stream going to the south of the sand bar. As time went on, the north part of the stream filled up so that at the present time no water can go between Miller's original south line and the place where the tow-head formed without a rise of from five to six feet in the river. The whole stream now at normal times runs on the south side of this tow-head or gravel bar which formed. Respondent, who leased from Miller, claimed to have a lease on all of this gravel bar to the present thread of the stream, all of which, as before stated, lies south of this gravel bar, and seeks in this

action to prevent the defendant from landing his ties out of the river on this gravel bar and hauling them in wagons on same to a public road running practically north and south and crossing the river.

Appellant contends that the Gasconade river, at this point, is a navigable stream; that the island or the bar which formed in the stream did not become the property of the adjacent landowner on the north and that therefore the title never vested in plaintiff's line of title, and that it has no right to complain of defendant's use of this gravel bar in hauling ties along it up the river to the public road.

The plaintiff contends that the Gasconade river, at this point, is not a navigable stream in the sense that the title to the bed of the river is retained in the State, but is in the adjoining owners of the bank to the thread of the stream.

Appellant, to sustain his position, calls our attention to the record made in the trial court in this case in which it was admitted by both parties that the Gasconade river, at this point, was a navigable stream. By this admission, he contends that the title to this gravel bar or island which formed never having been owned by respondent's lessor, respondent has no right to complain of his use. There can be no doubt that appellant would be correct in the stand taken if the Gasconade river at this point was such a navigable stream as that the title to the bed of the river was retained in the public and not in the adjoining landowners. It is equally true that if the river at this point is a non-navigable stream in the sense that the State or government has not the title to the river bed, then the adjoining landowners' ownership runs to the thread of the stream, and such ownership is subservient only to the rights of the public to use such stream as a highway upon which it can float logs, ties and such other merchandise as the volume of water will carry during certain seasons of the year.

Upon reading the decisions cited by the attorneys in this case, it is apparent that the courts have used

the word navigable in dealing with the various cases
that have arisen before them concerning the rights of
riparian or adjoining owners, going to the questions
relating to title to land, the rights of navigators, or
those using the stream as a highway, and the rights to
the banks, both as to such navigable streams as the
Missouri and Mississippi Rivers and as to streams
which will float logs and commerce and used as a high-
way though the title to the river bed be in the adjoin-
ing owners, and on questions relating to egress and
ingress to the stream; and in determining just what
was meant by the word navigable, when used in the
opinions in this State, thought must be given to the
question which was involved in the particular litiga-
tion. For illustration, were this case one in which the
right of the defendant to float his ties down this river
along this land was involved, then an admission by the
parties that the river was navigable would be an ad-
mission that would make the stream navigable or float-
able and hence subject to be used by the defendant
and the general public as a highway; that is, the use
of the stream or so much thereof as is necessary to
float his commerce and to do the necessary and inciden-
tal things along the banks and shores which go with
floating that character of commerce. In other words,
he would have a right to float, to tie up for repairs or
in emergencies on the banks and to do anything which
is incidental to travel of that character on that stream,
and such an admission would be binding upon both
parties as to that question. But, where the court must,
as we are bound to do, take judicial notice of the nav-
igable streams of Missouri, when used in the broad
sense, where the bed of the river is retained in the pub-
lic and not deeded to the adjoining landowners, an ad-
mission by both parties hat such a stream was navi-
gable would not and could not bind the courts in deter-
mining the issues in the case. And neither will the
courts be bound by an admission that a stream in which
the term navigable is limited, in that it is merely a
highway and one in which the bed of the river is owned

to the thread by the adjoining owners subject to the rights of the public to use it as a highway, and be required to decide the cause as though the bed of the stream belonged to the public. This is clearly the rule laid down for us to follow by the Supreme Court in the recent case of Wright Lumber Company v. Ripley County, 192 S. W. 996, and cases therein cited. [See, also, State ex rel. v. Taylor, 224 Mo. 393, l. c. 483, 123 S. W. 892, l. c. 907; State v. Wright, 208 S. W. 149; Northcut v. Lumber Company, 187 Mo. App. 386, 173 S. W. 15; Weller v. Lumber Company, 176 Mo. App. 243, 161 S. W. 853.]

We must, therefore, hold that the river, at the point where this controversy arises, is navigable or floatable in the sense that it may be used as a highway, but not in the sense that the bed of the stream was retained in the public and that any islands formed in the stream would become the property of the public.

In quoting from Farnham on Water & Water Rights, Vol. 1, sec. 25, in dealing with the rights concerning a stream such as we have under consideration, in the case of McKinney v. Northcutt, 114 Mo. App. 146, l. c. 157, 89 S. W. 351, the court says: "But the right of navigation does not authorize interference with the bed of the stream or with the banks or the destruction of property on the banks. The right to float is but a right of passage, and includes only such rights as are incident to the use of the stream for that purpose and necessary to render such use reasonably available."

We take judicial notice of the fact that the point on the Gasconade river, where this cause of action arose, is near its source; that on the topography of the country is stamped the grandeur of the magnificient Ozark uplift; that the stream throughout the country of Pulaski is at many places narrow and its waters swift and beautiful; that in the beds of the Ozark Streams there are shoals and bars which furnish a happy camping ground for the erstwhile fisherman; an occasional rapid joins in the chorus of nature, and that while actually

capable of floating logs, ties and commerce of this character, they are not navigable streams with the bed of the river in the public. In State ex rel. v. Taylor, 224 Mo. 485, 123 S. W. 892, the definition of a navigable stream, in the broad sense, where the title to the bed is in the 'public is a stream such as will permit and bear the passage of ordinary boats of commerce upon the bosom of its waters. This case was quoted from and approved in Wright Lumber Company v. Ripley County, 270 Mo. 121, 192 S. W., 996.

The law is well settled that when the United States surveyed its lands along the banks of a navigable river, and has sold and conveyed such lands by sub-divisions, its patent conveyed the title to all the lands lying between the meandering line and the thread of the river, unless previous to the issuance and delivery of such patent it had also surveyed such lands as government sub-divisions or had expressly reserved them when so surveyed. [See Wright Lumber Co. v. Ripley County, 270 Mo. 121, 192 S. W. 1. c. 998. See, also, Benton v. Morrow, 61 Mo. 350.]

The evidence in the case before us shows that the fractional quarter section adjacent to this sand bar was originally surveyed by the government, containing some twenty one acres, whereas all of the land including the sand bar now owned by plaintiff's lessor is a little over eighteen acres, which would indicate that at the time the government surveyed this land the thread of the river was then even farther south than the place where it now runs. In a case where land is patented to a riparian owner by the government, and part of it is washed away and it is afterwards restored by accretion, the riparian owner acqires the title thereto. [Minton v. Steele, 125 Mo. 181, 28 S. W. 746.]

We must, therefore, hold that the land here in question, over which the defendant seeks to drive his teams with his ties in order to get them from where they are pulled out of the river to the public road, is on the land now leased and controlled by the plaintiff; that

such use is broader than a mere right of passage over the stream as a highway; that the river at this point is navigable or floatable; is a highway with the ownership to the bed of the river to the thread of the current in the adjoining landowners, and that the use sought to be put to the sand bar by the defendant is a constant trespass of the plainsiff's acquired rights. The judgment of the trial court will, therefore, be affirmed.

*Sturgis, P. J.*, and *Bradley, J.*, concur.