GEORGE N. ELDER, RESPONDENT, v. J. M. DELCOUR, APPELLANT.—263 SW (2) 221.

Springfield Court of Appeals.   Opinion filed December 10, 1953.

*George F. Addison,* and *W. E. Seay,* of Salem, *Jay White,* and *Lynn Bradford,* of Rolla, Attorneys for Appellant.

840

*L. Clark McNeill,* Salem, Missouri, *Samuel Richardson,* Potosi, Missouri, Attorneys for Respondent.

McDOWELL, P. J.—This action is under the declaratory judgment act to determine the right of plaintiff and others to use the Meramec River for the purposes of fishing by boat or wading therein. It is contended by defendant that the river is non-navigable; that he is the owner of the bed of the stream and has the legal right to

restrain the public from using said river where it flows through his land in Dent County.

The cause was tried before the court resulting in a judgment and finding that the Meramec River, where it crosses defendant's land, is public water and subject to travel by plaintiff and those who desire to wade or float down it in boats. Defendant appealed.

We shall refer to the appellant as defendant and to respondent as plaintiff in this opinion, being the position they occupied in the lower court.

The cause was submitted on an agreed statement of facts. We here set out such part of said statement of facts as is necessary for a decision of the issues in this case.

It is agreed that defendant is the owner of a farm in Dent County, through which the Meramec River flows; that he had displayed signs reading "posted—no hunting, fishing or trespassing without permission".

It is agreed that the Meramec River rises in Dent County about 25 miles from defendant's farm and flows through defendant's farm; that it is navigable in fact by canoes, row boats' and other small floating craft but is not navigable by larger boats or vessels. It is admitted that in a period of the past logs and timber were customarily transported by floating at the point where the river crosses defendant's land and for many miles up stream; that the same now has the capacity and suitability for such use; that the stream is well stocked with fish at many points in the vicinity of defendant's farm and at points above and below said farm and is heavily fished by sportsmen, both wading and floating from the bank. It is agreed the farm is several miles up stream from the mouth of Crooked Creek.

It is agreed that plaintiff is a resident of Cole County, Missouri, and holds a state hunting and fishing license authorizing him to fish; that on the 13th day of May, 1952, plaintiff had business at the village of Cook Station, in the south edge of Crawford County, some two miles north of defendant's land; that on that day he placed a canoe in the river and, accompanied by his wife, proceeded to float down the river, fishing until he arrived at defendant's farm where he found a water gate obstructing his passage over defendant's land and was, by the defendant, ordered not to go upon defendant's property. Defendant informed plaintiff that he claimed to own the bed of the stream and that the farm was posted and threatened plaintiff with a suit for damage for trespassing if he entered upon the land. Plaintiff informed defendant that he intended to cross the water gap and proceed down the river across defendant's land; that it was his intention to tie up his canoe at likely spots and to wade the bed in order to fish such likely spots; that if he found obstructions across the stream he could not remove he would carry his canoe around said obstructions on the bank

and that it was his intention to make camp upon the bank of the river for the purposes of eating lunch and repairing the canoe, if needed.

It is admitted that after plaintiff was forbidden to enter defendant's land, he pressed down the water gap and proceeded down the river; that he did find a log jam across the river and he and his wife removed the canoe from the stream, carried it on the bank around the obstruction and re-entered the stream below; that he did wade down the bed of the stream fishing likely spots on defendant's land; that plaintiff continued to float across defendant's property to a public road crossing near Cook Station.

The first issue raised by defendant is that the Meramec River, at the point in question, is not a public highway in the sense that it is open to the free and unrestricted use for the purpose of passage and navigation.

To support this contention defendant cites State ex rel. Applegate et al. v. Taylor et al., Mo. Sup. 123 S. W. 892, 919.

In this case the court was discussing statutes which authorized the altering of natural streams not navigable when the same is necessary to drain land. It was discussing the Chariton River and the question as to whether the legislature, by the use of the words in the act of 1845, "a public highway", made the stream a navigable stream and, in this opinion, the court made the following statement of law:

"* * * When we consider the size, location, and uses to which those streams were then being put, the conclusion is irresistible that the Legislature never once thought of constituting and declaring them and like streams to be public highways in the sense of navigability. No ordinary boat could ply any of them, and but few of them at ordinary stages of water were capable of floating an ordinary canoe, while some of them during the dry seasons would scarcely float a pill box. To hold under this state of facts that it was the design of the Legislature to constitute and declare these small rivers and creeks to "be navigable streams within the ordinary meaning of those words would be absurd and a reflection upon the intelligence of the Legislature and upon the court that should so hold. * * *

"We, therefore, hold that Chariton was not a navigable river within the meaning of said acts of 1903 and 1905, authorizing the organization of drainage districts * * *"

Defendant cites Laws of Missouri, 1839, page 83 and Laws of Missouri, 1856-57, page 172.

We find it is unnecessary to discuss the state laws which declare certain non-navigable streams to be public highways. In the first place the Supreme Court of this state has held that the legislature has no right to declare a non-navigable stream navigable. The law clearly is that the question as to whether or not a stream is navigable is a judicial question.

It would seem in this case that at one time the Missouri Legislature did declare the Meramec River a public highway up to the mouth of

Crooked Creek but even this act was later repealed. If there is any conclusion to be gotten from this legislative act, it would be that that part of the river which was not declared a public highway was non-navigable. However, we think that the act of the legislature is of no benefit in passing upon the question in issue.

Plaintiff, under the first point made in his brief, cites State ex rel. Citizens' Electric Lighting & Power Co. v. Longfellow et al., Mo. Sup., 69 S. W. 374, 377.

In this case the Supreme Court quotes from Howard v. Ingersoll, 13 How. 391, 14 L. Ed. 189 as follows:

"The same author, in section 54, says: 'Nature is competent, it has been said, and it is now established in this country, overruling the earlier decisions, that the public have a right of passage over all fresh-water streams which are by nature susceptive of general use, and that in general those rivers are public and navigable in law which are navigable in fact.' A riparian owner is entitled to access to the waters and to the use of the waters for all purposes not inconsistent with the public right of navigation thereon. * * *"

We fully agree with the law as stated in this case and cited by plaintiff, but it does not support plaintiff's contention, that is, that the river is navigable in fact.

Plaintiff cites State v. Wright, Mo. App., 208 S. W. 149, 150, supporting his contention that rivers which are public and navigable in law are navigable in fact. We quote from that opinion:

"The island in question is shown to be owned by the Wright Company and was so adjudicated in Wright Lumber Co. v. Ripley County, 270 Mo. 121, 136, 192 S. W. 996, where the court also held that Current river is a nonnavigable stream in the sense that the fee title of a riparian landowner extended to the middle of the stream. This river is shown, however, to be a 'pretty good sized little stream', as one witness said, and is extensively used by small boats and river craft, as well as for rafting logs and all kinds of timber products to market. We take judicial knowledge also, in a way, that it is a fine fishing stream, and that boats are used for that purpose also. This court, in Weller v. Lumber Co., 176 Mo. App. 243, 256, 161 S. W. 853, 857, took notice that this same river is navigable in the sense that it is 'capable of transporting commerce in any manner in which * * * commerce is ordinarily conducted is a navigable or floatable stream and is a public highway.' In McKinney v. Northcutt, 114 Mo. App. 146, 161, 89 S. W. 351, 355, the court held that a natural stream of water capable of being used for floating rafts of logs, timber, or ties to market, is navigable in the sense that it is a public highway which no one, even a riparian owner, has a right to obstruct, 'and the rights of the riparian owners to the soil adjacent to and underlying the bed of such stream are subject to this right of easement in the public which rests on the necessities of commerce'; that the public 'had a right to occupy the stream in

floating his ties to market without inflicting injury upon the adjacent property.' In Northcut v. Lumber Co., 187 Mo. App. 386, 389, 173 S. W. 15, this court upheld the right of the public to use streams smaller than Current river as public highways for floating ties and "timber, and that a person so using it would not be liable for damage to a riparian owner except on proof of negligence * * *"

We fully agree that the law as stated herein is that where the stream is capable of carrying commerce it is navigable in fact, even though the title to the stream continues to belong to the owner of the land through which the stream flows, yet, such private ownership is subject to the easement of the public for the purposes of commerce.

Plaintiff cites Slovensky et al. v. O'Reilly et al., Mo. Sup., 233 S. W. 478, 481.

In this case the court states the law:

"The interest, if any, of the respective parties to the 4.50-acre tract is dependent upon the character of the Meramec river as to its navigability. In 27 R.C.L. p. 1302, it is said:

" 'By the great weight of authority in this country, navigable waters are now defined as waters capable of being navigated; that is, navigable in fact. This definition is in accord with the civil law on the subject. In the words of the Digests, a navigable river is statio iturve navigio. The rule by which to determine whether waters are navigable is variously stated, but clearly enough defined. The test of navigability of a river, as stated by the Supreme Court of the United States, is that those rivers are navigable in law when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water. Another test is whether, in its ordinary state, a stream or body of water has capacity and suitability for the usual purpose of navigation, ascending or descending, by vessels such as are employed in the ordinary purposes of commerce, whether foreign or inland, and whether steam or sail vessels'.

"There are cases which call rafting logs commerce upon the stream, and broaden the view of the foregoing rule as to navigable streams. In Missouri, however, we have held to the more "rigid rule, and with some aggressiveness. State ex rel. v. Taylor, 224 Mo. loc. cit. 484 et seq., 123 S. W. 892; Lumber Co. v. Ripley County, 270 Mo. loc. cit. 130 et seq., 192 S. W. 996. The first of those cases deals with Chariton river, and the latter with Current river. Each were declared nonnavigable, notwithstanding we had early statutes declaring them to be public highways. Such statutes, however, did not declare the streams to be navigable streams. * * *"

In referring to the statutes mentioned before in this opinion, in which the Meramec River was declared a public highway below the mouth of Crooked Creek, the court made this statement:

"We take it that this refers to the stream involved in this case, although the spelling differs. We know of no other stream to which this act of 1839 could apply. In the first place this act does not declare the stream to be a navigable stream, and if it did so declare it would be against the real facts. State ex rel. v. Taylor, supra. We have never heard that the white sails of commerce floated upon the waters of the Meramec when it was at its ordinary stages. We don't know historically or otherwise of any special commerce which it has carried. Its treachery, as a stream for bathing and canoeing, near St. Louis, is well known, but its navigability up in Crawford county (near the head waters of the stream) will not be judicially noticed. On the contrary, we would rather take notice that such stream is not a navigable stream within the most soundly reasoned rules upon the subject. The record in this case is silent as to the use or size of the stream, where it flows through Crawford county, and the judicial knowledge that we have of state history would preclude us from saying that the stream is a navigable one, but we would have to judicially know the contrary."

In this case the Supreme Court clearly holds that the Meramec River is a non-navigable stream. However, the court was passing upon title to land but, from the law declared, the title to the bed of the stream, where the river flows through defendant's land, is in defendant.

We are brought to a consideration of the question as to whether or not, under the admitted facts in this case, this river is navigable in fact so as to give the plaintiff the right, together with the public, to go upon defendant's land in canoes or by wading and fish.

In United States v. Ross, 74 Fed. Supp., 6, 8, the law is stated:

"The Court then quotes from the case of Rowe v. Granite Bridge Corp., 21 Pick., Mass., 344, with approval: '* * * it is not "every small creek in which a fishing skiff or gunning canoe can be made to float at high water, which is deemed navigable". But in order to give it the character of a navigable stream it must be generally and commonly useful to some purpose of trade or agriculture.' "

This same principle of law is declared in 56 Amer. Jur., 647, sec. 181 in the following words:

"In order that a stream or body of water may be characterized as 'navigable', it is necessary, according to many authorities, that it be navigable for some purpose useful to trade or commerce. The capability of use by the public for such purposes affords the true criterion of navigability rather than the extent or the manner of that use. If it is capable in its natural state of being used for purposes of commerce, no matter in what mode the commerce may be carried on, it is navigable in fact, and therefore becomes a public river or highway. It is sufficient if it is capable of floating vessels, boats, or other craft, or rafts of logs, or logs in quantities to make it of commercial value. It must in all cases be first ascertained and determined that the floatage or navigation

proposed is a valuable or a beneficial use, but the question of profitable use should not receive great or controlling consideration. * * *

"Most of the definitions of 'navigability', while perhaps conceding that the size of the boats or vessels is not important, and, indeed, that it is not necessary that navigation be by boats at all, yet seem to convey the idea that the water "must, for the purposes of navigability, be capable of some commercial or pecuniary value, as distinguished from boating for mere pleasure. It has been held that a stream is navigable in fact only where it affords a channel for useful commerce and of practical utility to the public as such, it being declared that although there may be water enough in places for rowboats or small launches, or although hunters and fishermen may pass over the water with boats ordinarily used for that purpose, the waters are not for these reasons alone navigable. * * *"

56 Amer. Jur. 646, Sec. 180 states this rule of law:

"According to many authorities, the question of navigability depends on whether or not the river in its natural state is such that it affords a channel for useful commerce. * * *".

65 C. J. S. p. 54, Sec. 6, lays down this rule:

"As a general rule, the character of the commerce essential to navigability is that which is useful and has practical utility to the public. It is generally held that the stream must be navigable for some useful purpose, such as trade or agriculture, rather than for mere pleasure, and that the mere fact that waters have been used, or are capable of being used, by small boats or pleasure craft, such as canoes, rowboats, small skiffs, or launches, does not of itself render them navigable. * * *

"As a general rule, it is not the use which has been made of the water but the use which may be made of it without a change of conditions that determines its navigability. In other words, if a stream or other body of water is rendered available for commerce by reason of its depth, width, and location, it may be navigable whether or not it is actually so used. * * *"

65 C. J. S. p. 56, sub-section (c) reads:

"A stream, in order to be constituted a navigable stream, need not be perennially so but may be floatable only at certain seasons. The seasons of navigability, however, must occur regularly, and be of sufficient duration to subserve a useful public purpose for commercial intercourse. * * *"

Plaintiff, in his brief, cites 65 C. J. S. Sec. 1, p. 46. We find the following law stated:

"* * * However, waters may be considered to be navigable for some purposes and not for others, and a stream may be navigable or floatable in the sense that it is a highway for navigation and is subject to that easement, but not navigable in the sense that the ownership of the bed of the stream is retained by the public. It has been held that the term 'Navigable' has been extended and includes waters that are

not navigable in the ordinary sense, and that the question whether or not waters are navigable depends on the natural availability of waters for public purposes, taking into consideration the natural character and surroundings of a lake or stream. * * *''

Plaintiff cites Hobart-Lee Tie Co. v. Grabner, Mo. App., 219 S. W. 975, 976.

This case was cited under the last rule quoted in this opinion from C. J. S. The case was decided by this court. The action was to enjoin defendant from landing ties at certain points on the Gasconade River. It was contended that at the point where the ties were landed the river was navigable. The plaintiff contended that the river was not a navigable stream at the point in the sense that title to the bed of the river is retained by the State. The court stated:

''Upon reading the decisions cited by the attorneys in this case, it is apparent that the courts have used the word 'navigable' in dealing with the various cases that have arisen before them concerning the rights of riparian or adjoining owners, going to the questions relating to title to land, the rights of navigators, or those using the stream as a highway, and the rights to the banks, both as to such navigable streams as the Missouri and Mississippi rivers and as to streams which will float logs and commerce and used as a highway, though the title to the river bed be in the adjoining owners, and on questions relating to egress and ingress to the streams; and, in determining just what was meant by the word 'navigable', when used in the opinions in this state, thought must be given to the question which was involved in the particular litigation. For illustration, were this case one in which the right of the defendant to float his ties down this river along this land was involved, then an admission by the parties that the river was navigable would be an admission that would make the stream navigable or floatable and hence subject to be used by the defendant and the general public as a highway; that is, the use of the stream or so much thereof as is necessary to float his commerce and to do the necessary and incidental things along the banks and shores which go with floating that character of commerce. * * *''

Clearly, the courts of this state have held that the Meramec River is a non-navigable stream in the sense that the title to the land is in the landowner through whose land the stream passes. We find the law to be that in order *to constitute a stream a highway or navigable in fact,* which would give the public a right to use the stream as an easement, *it must have sufficient capacity to be capable of being used for useful purposes of navigation, that is, for trade and travel in the usual and ordinary modes. If the stream is being used to float logs and ties it would be considered a navigable stream. In other words, if a stream or other body of water is rendered available for commerce by reason of its depth, width, and location, it may be navigable whether or not it is actually so used. It is not enough that the stream would permit canoes*

*and small fishing boats to pass over it or fishermen to wade therein for the purposes of taking fish from the stream to constitute such stream navigable in fact so as to give the public a right to go upon said waters when forbidden by the owner of the land through which the stream flows.*

Under the facts in this case, there might have been a time when logs had been floated over the river at the point in question but, certainly, as it exists today in its natural state, the river is not susceptible of being used by the public in floating logs down the river or for any useful navigation. The only use that could be reasonably contended for is that the stream contains fish and that this plaintiff wanted to operate his canoe on a fishing trip across defendant's land and because the stream is a good fishing place and fishermen have gone over it in small canoes and skiffs, plaintiff thinks it is a highway. *We hold that such facts do not constitute the river, where it crosses defendant's land, a highway or the river navigable in fact. Defendant had a right to put a water gate across the stream, post his land and plaintiff had no right to enter theron. Who would contend that if defendant wanted to erect a bridge across the stream so that he might pass from one side of his farm to the other, that he would not have the right to do so, even though such bridge might obstruct fishermen desiring to pass over the premises in their quest for pleasure? The Supreme Court, specifically, held this river to be non-navigable in passing upon the title to the bed of the stream and we find there is insufficient evidence to show that this stream was a highway where the public had been using it for commerce or for useful purposes.*

The judgment of the trial court is reversed and judgment is ordered entered for defendant that the Meramec River is non-navigable in fact and that the public is not entitled to use it across the land of defendant for the purposes of fishing. *Blair, J.* concurs. *Vandeventer* "deceased".