O'FALLON EXR. OF MULLANPHY v. DAGGETT AND PRICE.

| 4 | 343 |
|---|---|
| h169 | 128 |

The banks of navigable rivers, in this State, are public highways, and though owned by private individuals, fishermen and navigators are entitled to a temporary use of them, in landing, fastening and repairing their vessels, and exposing their sails or merchandise; yet this right has its reasonable qualifications and restrictions, and will not allow a navigator to land for several weeks, and under pretense of repairing, build houses, employ teams &c. thereby unreasonably obstructing the owner's enjoyment of his property.

Mullanphy in his lifetime, brought an action of trespass quare clausum fregit, against the defendants for breaking and entering his close &c. The defendants pleaded not guilty, and also that the close was theirs; the plaintiff then set out another close; the defendants to that part of the said close, bordering on the waters edge of the river Mississippi, and westward sixty feet, say they are not guilty; and as to the residue of said close, westward of said line, they say it is between the high water mark of said river, and the water's edge, at low water mark.— The plea then goes on to say that the Mississippi river now is, and was at the time said supposed trespasses were committed, a public highway and a common navigable stream, and that the plain, where the supposed trespasses were committed, was a common and public landing street and highway, through, over and along which, all persons lawfully might, and may go, return and pass and repass, at their free will and pleasure, and land their boats and vessells, lade and unlade their vessels and boats, to take on board and land crews and passengers, repair boats and vessels, at their like, free will and pleasure; wherefore the said defendants, having occasion to use the same landing, street and highway, at the several times, when &c. landed and moored their steamboat, called the St.

*Statement of the case.*

Louis, engaged in the lawful navigation of the river Mississippi, at the same landing, and did then and there unlade and lade the cargo of said boat, and landed passengers and received others into said boat, and did cause the boat to be repaired, and in so doing, they, their passengers, servants and agents, went, passed and repassed on foot, and with cattle and carriages into, through and over the said close, so being a public landing street &c. using the same as they lawfully might, doing no unnecessary harm. The defendants then pleaded that the said place is within the limits of the city of St. Louis; and that by an act of the general assembly, the people of the said city, were constituted a body politic and corporate, and the corporate duties were vested in a Mayor and Aldermen, and that the Mayor and Aldermen, were authorised to improve and preserve the navigation of the Mississippi river within the city; to erect and repair and regulate public wharves and docks; to regulate the stationing anchorage, and mooring of vessels; to open and keep in repair streets, avenues, lanes and alleys; to extend, open and widen avenues, streets, lanes and alleys; and to pass such ordinances, to carry into effect said powers, as the good of the inhabitants may require, and that before the committing the supposed trespasses, in September 1826, the Mayor and Aldermen, by ordinance, declared the residue of said plain to be a public street and highway, free for all people to pass and repass, and to be free for all purposes of landing boats, vessels—receiving and discharging cargoes; and that the said Mayor and Aldermen, did by ordinance, provide for the stationing and mooring vessels &c. By means whereof, the said residue of the said close, at the said several times was, and of right ought to be, a public and common landing street and highway for all to pass &c. to land and moor boats, receive and discharge cargoes &c. &c.; wherefore the said defendants, having occasion to use the same street and landing, at the several times mentioned, did under the license and authority of the Mayor and Aldermen, land a steamboat called the St. Louis, and in discharging and receiving a cargo and passengers, went, passed and repassed on foot, with cattle &c. &c. which are the same trespasses &c. wherefore they pray judgment. To the plea of not guilty, issue was joined; and as to that part of the first plea to the new assignment, which relates to so much of the place as lies without sixty feet of the low water mark, issue is taken to the country; and as to the space within sixty feet, the fact that the same was a public highway is

denied. The plaintiff then reasserts the injuries of land-
ing and repairing the boat, and other trespasses &c. &c.
On this state of the pleadings, the parties submitted the
cause to the court sitting as a jury. As to the first issue
of not guilty, on the original declaration, the court found
for the plaintiff; and as to the issue regarding the right of
the property, in the defendants, as to a part, the court
found for the defendants; all the other issues are also
found for the defendants; whereon the court gave judg-
ment for the defendants on the whole record. On the
trial, the plaintiff gave evidence, that on the second day
of September 1799, the lieutenant governor of Louisi-
ana, conceded to one Emilien Yosti, a piece of ground,
then just north of the city of St. Louis, but now in its
limits, of about five arpents, including the plain in ques-
tion, and running to the Mississippi. The words of the
grant, are bounded on the east by the river Mississippi.
Also, evidence was given that the same was duly con-
firmed by the American Government, and that Mullan-
phy had a regular title to that part on which the trespass-
es were committed, together with a lot enclosed on which
he lived on the top of the bank and adjoining and west-
ward of the place where the trespasses were committed.
It also appeared that the city had laid out a public street
along the margin of the river, on said land, but had not
actually opened the same; and that there was a space
between the east border of this street and the water's
edge, and that the defendants, opposite to the house and
garden gate of the plaintiff's opening to the river, landed
their boat, and there repaired the same, and used the said
street for the purpose of laying thereon lumber &c.—
passed and repassed on the said street and piece of ground,
with waggons, cattle &c.; and built on the space east of
the street, a small house or shed, and put a blacksmith's
shop there, for the purposes of repairing the boat, and did
repair the boat there, and kept the same there for about
space of six weeks. It was also proved, that the boat
was landed there by the direction of the city authorities.
Upon the testimony, the court decided the law was, that
the place where the trespasses were committed, was a
public highway, and the defendants had a right to do
what they did; there was some evidence to shew that
when the boat landed there, Mullanphy informed the
defendants, the land was his, and that defendants said they
did not regard the right of Mullanphy; that Mullanphy
had used some trouble to improve the bank and landing
for private use.

JUNE TERM
1836.

O'Fallon exer. of
Mullanphy.
v.
Daggett & Price.

Argument of
counsel for plain-
tiff in error.

**J. Spalding, for plaintiff in error.**

It is admitted that the use of the banks of rivers be-longs to the public for certain purposes, but it is contend-ed, not for the purpose of erecting work shops and repair-ing vessels, when none of the exigencies of navigation require it.—1 Partidas, 337; 4 Hall's law journal, 550; old rev. code, sec. 12, page 201; 2 Louisiana Rep. 200. In this case the evidence shows that Mullanphy had been at some trouble to make himself a landing place; could the defendants take and keep possession of it, against his wishes, for the purpose of laying up to repair, after their voyage had terminated? The city charter contemplates both private and public wharves in the section above referred to. If the defendants are correct in their posi-tion, there can be no private wharf. According to my views, the city has full control over the landing places, at the termination of all the cross streets, and along all the lots; which by the grants or confirmations, do not call for the river as a boundary; but the lot holders which call for the river as a boundary, have the right of erecting landing places, under the superintendance and control of the city, and of being paid for the use of them in ordinary cases. 2. There is a finding on the second issue un-warranted, there being no such issue on the record, as that finding presupposes, and there is no finding as to two material issues, joined by replications to pleas to the new assignments.

Opinion delivered by McGirk J.

Opinion of the
court.

The banks of nav-
igable rivers, in
ths State, are pub-
lic highways, and
though owned by
private individ-
uals, fishermen
and navigators
are entitled to a
temporary use of
them, in landing,
fastening and re-
pairing their ves-
sels, and exposing
their sails or mer-
chandise; yet this
right has its rea-
sonable qualifica-
tions and restric-
tions, and will not

The claim of the defendants to use this ground as they did, rests on this principle, that the navigable rivers in this State, and the banks thereof, below high water mark, are and of right out to be public highways, for the pur-poses of navigation. This principle is conceded by the counsel for the plaintiff, to be correct so far only as the exigencies of navigation may require; and the argument is, that here, there was no exigency of navigation exis-ting to justify the acts of the defendants. To sustain this point for the plaintiff, Mr. Spalding cites and relies on 1st Partidas, 337; 4 Hall's law journal; 2 Louisiana R. 200, and the revised code of 1825, sec. 12, p. 201.— Mr. Geyer, for the defendants, also relies on the above quotation from the Partidas. The first question will be, whether the city could lawfully lay out a street on pri-vate property, this being the property of Mullanphy by the grant of the Spanish Government. It is most clear, and not at all disputed by the defendants' counsel, that if

the property was in law the private property of the plaintiff, then the city cannot use the same for public uses, without making just compensation therefor. It is clear from the record, that no attempt has, on the part of the city, been made to make any compensation for the use of the land as a public street; nothing therefore can be claimed on this ground. The Spanish Government, granted the land to the water's edge. This grant must be interpreted, understood, limited and restrained, according to the law of the country, in force at the time when the grant was made. By reference to that portion of the Partidas, before cited, it will be seen that "rivers, ports and public roads, belong to all men in common, so that strangers coming from foreign countries, may make use of them in the same manner, as the inhabitants of the place where they are might do, and though the dominion or property of banks of rivers, belongs to the owner of the adjoining estate, nevertheless, every man may make use of them to fasten his vessel to the trees that grow thereon, or to refit his vessel or to put his sails or merchandise there. So fishermen may put and expose their fish for sale there, and dry their nets, or make use of the banks for all like purposes which appertain to the art or trade by which they live." The author then goes on to say, that "all the trees growing on the banks of rivers, belong to the owners of the adjoining estate, who may cut or cause them to be cut down, or do with them whatever they think fit; yet if at the time they are about to be cut down, they find any vessel fastened to them or about to be fastened to them, they cannot immediately cut them down; otherwise they would interfere with the right every man has to use the banks of rivers; but if there is no vessel fastened or about to be fastened to them, then they may be cut down and converted to the owner's use." Thus stood the law at the time the grant of this land was made to Yosti, under whom Mullanphy holds. It seems then, that when this grant was made by the King of Spain to Yosti, there existed a public standing law of the country, that whenever the banks of rivers were granted to subjects, such grants were understood as reserving certain common rights to fishermen and navigators. The first right reserved to navigators, was to touch the bank or land and fasten their vessels there to the trees growing on the land. The second right reserved, is to land on the shore, and refit their vessels; and the third, is to put their sails or merchandise on the bank. These are all, enumerated by the author, with regard to rights reserved

JUNE TERM
1836.

O'Fallon exr. of
Mullanphy
v.
Daggett & Price.

allow a navigator to land for several weeks, and under pretence of repairing, build houses, employ teams &c. thereby unreasonably obstructing the owner's enjoyment of his property.

to navigators; they of course are to be considered as so much subtracted from the right of the owner of the bank for public uses. When this grant was made to Yosti, we are to understand that the absolute dominion was granted to him, with these exceptions only. It is on the one side argued, that the defendant's case comes exactly within the privilege to repair. On the other side, it is insisted, that this privilege to repair, must be understood with several restrictions and qualifications; one of which is, that unless the vessel was on a voyage and needed repairs, to enable her to proceed, the owners had no right to select the place they did to repair; and in this case the vessel was in the public port and left the same by the direction of the city authorities, to repair in this place. It seems to us, this qualification of the privilege to occupy the bank, when the property is in a private person, is reasonable the general interests of navigation have been anxiously guarded by most commercial nations, and so they are with us, but it does not follow that the private rights of the people who own the land, are for that reason, to be disregarded. When a vessel is on a voyage and meets with any accident, which makes it necessary to touch the bank, she has a right to do so, leaving the bank, when private property, as soon as practicable. We cannot see why it is, that the vessel can seize on private property, in the possession and enjoyment of the owner, when other places might do as well. The owner of the tree when a vessel is tied to it or about to be tied to it cannot then exercise his general right to use the tree; it would seem reasonable therefore, that the use of the bank, in a case like this, should be restrained to cases of some sort of necessity, and should be founded on some better reason than the mere convenience of the owners of the boat. To tie a vessel to a tree temporarily, is one thing, but to moor the same permanently at the bank, when the property in the same, belongs to a private person, and there to submit the vessel to thorough repairs, is another thing; this requires much time, a large number of men with materials; it requires also the action very often of waggons and teams, and sometimes even houses to be built, for the convenience of the workmen. It is asked by the counsel, if it were lawful to invade the right of Mullanphy, in the way it was done, for one day, why would it not be lawful to do so for a whole year, and even for ten years, if the defendants should choose to be that long in repairing their vessel? No answer was given to this, and we think none founded in justice, can be given.

to it. The right to repair must, therefore, be limited to cases of emergency, and not extended to cases of mere convenience. Thorough repairs can seldom be made except in public harbors, where materials and workmen can be had; and for this reason, it is reasonable for the public to provide public docks, there every vessel has a right to go to make all sorts of repairs. Why should the owners be at liberty to select my bank, merely because they think that place will suit them best, when the public docks are open to them, and if they are not they are at liberty to purchase the privilege, and when not on a voyage they are supposed to have full time to do so?—that every one should so use his rights as not to injure or molest others in the enjoyment of theirs, is a maxim that well applies in this case. The law of the Partidas, that the owner of the tree on the bank cannot use his right when the same is in the lawful use of the navigator, seems to be an exemplification of the maxim. The King of Spain granted the bank to Yosti, and Mullanphy under him is the owner, he must not for that, obstruct the navigation of the river; he cannot project piers into the river, nor build houses on the bank, so as to injure the navigation of the same. So on the other hand the navigator cannot obstruct the owner's enjoyment of the same beyond the reasonable limits of necessity imposed on him at the time. In the case before us, the land was occupied about six weeks under pretence of repairing, and to repair it became necessary to build a house and fix therein blacksmith's tools, to employ men and beasts, in considerable numbers, and all for no other reason than this place suited the defendants better than any other place.

We are for these reasons, of opinion that the circuit [court] erred in deciding the law to be with the defendants. The judgment is reversed with costs; the cause is remanded for a new trial.

JUNE TERM
1836.

O'Fallon exr. of
Mullanphy
v.
Daggett & Price

45