WELTON & EDWARDS v. MARTIN.

APRIL TERM.
1842.

1. To divert, or obstruct a private water course, is, by the common law, a private nuisance; and although obstructions to private water courses are declared by Statute, (R. S. 1835, title "Mills and mill dams," sect 23, p. 498) public nuisances; yet, that Statute is merely cumulative, and made for the sake of the remedy, and not with a view to alter or affect the remedies afforded by the common law to individuals for such injuries.

2. When a public nuisance causes a special damage to an individual, he has the same remedies for that damage, and none other, which he would have had, if the injury had proceeded from a private nuisance.

3. The jurisdiction of courts of equity, in cases of nuisance, though not often exercised, is undoubted. It is founded on the right to restrain the exercise, or the erection of that, from which irreparable damage to individuals, or great public injury, would ensue. Every diminution in value, however, of the premises, is not a ground for the court to interfere; nor every species of mischief upon which an action on the case might be maintained.

4. A. filed his bill in equity, complaining of obstructions to his mill, caused by the erection of a dam by defendants, which caused the water to flow back, and so to obstruct his mill and machinery, as to render them of little or no value; and praying for an injunction. Held, that the case was not such a one, as would warrant the exercise of the restraining powers of a court of equity, by injunction.

Appeal from the Clay Circuit Court, sitting in Chancery.

FRENCH & DONIPHAN for Appellant.

WOOD & REES for Appellee.

*Opinion of the Court, delivered by Scott, Judge.*

Martin, the complainant below, filed in March, 1839, his bill against the defendants below, Welton & Edwards, in which he stated, that he is the owner of a tract of land, through which Fishing river runs: that he, at the March term of the Clay circuit court, in 1838, filed his petition for leave to erect a dam on the said stream, to be connected with a grist and saw mill: afterwards, at the July term of the said court, permission was granted to erect his dam: that so soon as permission was obtained, he commenced building his dam, saw, and grist mill: that his dam and

APRIL TERM.
1842.

Welton &
Edwards
v.
Martin.

saw mill were so far completed, as to enable him to work the saw mill; and that the grist mill and other works, will be completed in a few weeks. The bill then charges, that the defendants below, Welton & Edwards, about the first of March, 1838, without the authority of law, erected a dam on the same stream, below the seat of the complainant, which caused the water to flow back, and so to obstruct his mill and machinery, as to render them of little or no value; that the defendants are still at work on their dam and mills connected with it. Prayer, that the defendants may be enjoined, and restrained from further work on said dam so erected; and from further continuing the same, so high as to back the water on the complainant's mills, and that at the final hearing, the defendants may be compelled to pull down and destroy their dam, it being a public nuisance.

The defendants, in their answer, admit that the complainant is owner of the tract of land mentioned in his bill, and did erect, at the time stated, the dam and mills therein described, by the permission of the circuit court of Clay county.— They admit they have built the dam complained of, about a mile and a half below the complainant's; but deny that it causes the water to flow back so as materially to injure the complainant's mill, and allege that it can now do as much work as if the defendants had not erected their dam: they deny that their dam was built without authority of law: that, at the Nov. Term, in 1837, of the Clay circuit court, a petition was filed, praying for leave to erect the same, which was granted at the July term following, and in pursuance thereof, their dam was built: that at the time of filing their said petition, they believed the complainant was not owner of the land, at the point where he erected his dam, but afterwards purchased the same, maliciously designing to deprive them of their mill seat. They admit, that when the mill stream is full, their dam causes the water to back to the complainant's mill, but deny that it does any injury, &c. To this answer, there was a replication, and the cause set for hearing: at the return term of the writ, a motion was made for an injunction, the motion was continued, and it does not appear from the record that it was ever

disposed of. The cause was afterwards heard on the bill, answer, exhibit, and depositions of witnesses, when the court below decreed as follows: that the defendants be per- petually enjoined from all other time, continuing said dam in a condition to back the water on the dam, mill, and mill machinery of said complainants; that they be perpetually enjoined from continuing their dam in such a condition, as that the back water therefrom, will be nearer than nine inches of the head of the shoal in said creek, where the state road from Liberty to Richmond crosses the same: that the defendants abate, pull down, and destroy so much of their dam, as causes the water to back beyond the point mentioned on said shoal. That the said defendants, be further perpetually enjoined, from further work on said dam, &c.; from erecting or constructing other, or new dams, or other obstructions in said water course, so as to back the water higher up the said water course than said point on said shoal: and it is further ordered, that if the defendants fail to abate their dam as required then, that the sheriff carry so much of this decree into effect. From this decree, an appeal was taken by the defendants to this court.

The bill of exceptions not having been signed by the judge who tried this cause, will not be noticed, the court yielding to the motion, to strike the same from the record. This will narrow the case to the single question, whether the bill presents such a state of facts, as warrants the exercise of the preventive justice of a court of chancery.

The counsel for the defendants contended that, by the statute concerning mills, all unauthorized obstructions to water courses, were declared public nuisances, and on the authority of the opinion of Chancellor Kent, in the case of the Attorney General v. The Utica Insurance Company, 2, J. C. R. insist, that as the injury complained of, is a public nuisance, a court of equity has no jurisdiction. It is a plain principle, that the proprietor of land is entitled to the use of a water course which flows through it, and the law gives a remedy for the violation of the right. To divert or obstruct a water course, is, by the common law, a private nuisance, 2, J. C. R. 164, Gardner v. Newburgh, and al-

To divert or obstruct a private water course, is, by the common law, a private nuisance; and although obstructions to

APRIL TERM. 1842.

Welton & Edwards v. Martin.

private water courses are declared by Statute, (R. S. 1835, title "mills and mill dams," sect. 23, p. 408,) public nuisances. Yet that Statute is merely cumulative, and made for the sake of the remedy, and not with a view to alter or affect the remedies afforded by the common law to individuals for such injuries.

When a public nuisance causes a special damage to an individual, he has the same remedies for that damage, and none other, which he would have had, if the injury had proceeded from a private nuisance.

The jurisdiction of courts of equity, in cases of nuisance, though not often exercised, is undoubted. It is founded on the right to restrain the exercise, or the

though obstructions to private water courses, are declared public nuisances, yet that enactment is merely cumulative, and made for the sake of the remedy, and not with a view to alter or affect the remedies afforded by the common law, to individuals for such injuries. Admitting that the obstruction complained of, could only be regarded as a public nuisance, and consequently removed by proceedings, at the instance of the State; yet the law is clear, that when a public nuisance causes a special damage to an individual, he has the same remedies for that damage, and none other, which he would have had, if the injury had proceeded from a private nuisance, 16, E. 196, Eden on injunctions, 162. This suit was instituted by an individual complaining of a special damage, and is entirely dissimilar to the case of the Attorney General v. The Utica Insurance Company, a proceeding conducted in behalf of the State, by her attorney general, for an alleged injury, affecting the whole State, and not individual rights. Indeed, it may be questioned, whether the doubts entertained by Chancellor Kent, in that case, as to the jurisdiction of a court of chancery, were well founded. Eden on injunction, 162; Story's equity, 202.

Reverting to the main question, whether the bill presents such a state of facts, as will warrant the interference of a court of chancery, by injunction, we are constrained to say, that if the case presented by the bill, would warrant the exercise of the restraining power of a court of chancery, it would be difficult to concieve a nuisance, which would not justify such interposition.

The jurisdiction of courts of equity, in cases of nuisance, though not often exercised, is undoubted. It is founded in the right to restrain the exercise, or the erection of that, from which irreparable damage to individuals, or great public injury, would ensue. Every diminution in value, however, of the premises, is not a ground for the court to interfere, nor every species of mischief upon which an action on the case might be maintained. Chancellor Kent says, "the cases in which chancery has interfered by injunction, to prevent or remove a private nuisance, are those in which

the nuisance has been erected, to the prejudice or annoyance of a right, which the other party had long previously enjoyed. It must be a strong and mischievous case of pressing necessity, or the right must have been previously established at law." Lord Hardwick intimated, that to supply a legal decision, the plaintiff must have been in the previous enjoyment of the subject, at least three years, before he would interpose by injunction, in the case of a private nuisance.

Eden, in his valuable work on injunctions, speaking of nuisances, observes, "whatever may be the actual jurisdiction upon this point, it is, however, certain, that courts of equity, are at present, extremely unwilling to interpose without a trial at law; a question, therefore, has always arisen in these cases, whether the court will grant or continue an injunction *till the trial*." "Where the alleged nuisance consists in the exercise of a manufacture, the court upon the same principle upon which it feels so reluctant to restrain the working of mines and collieries, would require the fact of its being a nuisance, to be first clearly established at law." If these are the principles by which a court of equity is governed, in the exercise of its powers in relation to nuisances, it is not easy to see what is contained in the complainant's bill, that would justify its interposition. Here there is no long possession; no irreparable damage; no strong nor mischievous case of pressing necessity, nor establishment of his right by a trial at law, for it cannot be pretended, that the permission granted by the court, to erect the dam on an ex-parte proceeding, as against the defendants, established any right.

There is a view of this matter, derived from the course of the court below, which, in our judgment, is decisive against the complainant: a court of equity only interposes in these matters, when a suitable case is made out by the bill; if a case is clearly made out upon affidavit, it will grant or continue an injunction, until a trial can be had at law.

If the bill is filed merely for an injunction, and no prayer is made for an account, or compensation for damages, and the injunction is not granted by the court to which the bill

APRIL TERM, 1842.

Welton & Edwards
v.
Martin.

erection of that, from which irreparable damage to individuals, or great public injury, would ensue. Every diminution in value, however, of the premises, is not a ground for the court to interfere, nor every species of mischief upon which an action on the case might be maintained.

A. filed his bill in equity, complaining of obstruc-

is addressed, there is an end of the matter. In this case there is no prayer, nor any foundation laid for compensation. The sole object of the party, seems to have been an injunction; the court below never grants it, yet retains the cause, and in effect, although sitting as a court of chancery, tries an action at law between the parties, and then at the final hearing, enters the decree before recited. As the complainant failed to establish his right to equitable protection by means of an injunction, the cause was at an end, and the bill should have been dismissed. The granting of an injunction in the first instance, was indispensably necessary, in order to give the court authority to retain the cause, until the final hearing. Bailey v. Taylor, 4, Eng. Con. Chan. R. 329.

The counsel for the complainant, cited and relied upon the case of Gardner v. The Trustees of the village of Newburgh, 2, J. C. R. 162, as being in point. In that case the trustees of a village, proceeding under the authority of an act of the legislature, by which they were empowered to supply the village with water, were about to divert an *ancient* stream, which had immemorially flowed through a farm; the chancellor laying stress upon the fact, that the water had been immemorially enjoyed with the farm; and because the legislature had taken private property for public purposes, without providing a fair compensation, interfered by injunction to restrain the proceedings of the trustees, until a compensation was made for the persons who might be injured by diverting the water. In a subsequent case, Van Bergen v. Van Bergen, 3, J. C. R. 282, an application was made for an injunction, under circumstances similar to those stated in the bill now under consideration, the party complaining of the obstructions to his mill, caused by the erection of a dam on the same stream, below, which made the water flow back upon it; the chancellor, although of the opinion that the party had no just cause of complaint against the defendant, yet, after reviewing the authorities, held that the case was not such a one, as would warrant the exercise of the restraining powers of a court of equity, by injunction.

Decree reversed.