DARDENNE REALTY COMPANY, A CORPORATION, RESPONDENT, v. FLORENCE ABEKEN, LUCILLE R. OTTO, EDWARD RUNGE AND URBAN GRIESENAUER, DEFENDANTS, EDWARD RUNGE AND URBAN GRIESENAUER, APPELLANTS.—106 S. W. (2d) 966.

St. Louis Court of Appeals. Opinion filed June 29, 1937.

*Bryan, Williams, Cave & McPheeters* for respondent.

*B. H. Dyer* for appellants.

SUTTON, C.—This is a suit in equity brought by plaintiff to perpetually enjoin the diversion of, or interference with, the usual flow of water in a natural watercourse, and further for a mandatory injunction to require defendants to remove a certain dam from said watercourse and to close certain diversion ditches leading away from the natural channel of said watercourse.

The evidence shows that plaintiff is the owner of 1460 acres of land in St. Charles County, and that there are located on this land two lakes, Big Rondeau and little Rondeau, having areas of approximately 800 acres and 200 acres respectively. These lakes had never been dry during the period of approximately forty years, covered by the testimony, with the exception of the year in which this suit

was tried, and one other, and in normal times had an average depth of four to five feet of water. They were dependent for their water supply on the flow from Belleau Creek, although when heavy rains occurred some surface water drained into them from off the surrounding prairie. There was and is located on plaintiff's land improvements which include a large clubhouse, boathouse, pumps, pumphouses and other equipment.

The defendants Runge, Abeken and Otto own a track of 360 acres, known as the Runge land, located about a mile and a quarter from plaintiff's land in a southwestwardly direction, and immediately to the north of the Runge land lies a tract of 160 acres owned by August A. Busch's heirs. This tract immediately adjoints plaintiff's land.

Belleau Creek, from time immemorial, has risen in the hills several miles back from any of the lands in question. This creek at its point of origin is fed by numerous springs, some of which are continuous and some "wet weather" springs. It runs as a natural watercourse down from the hills into the bottom land. It runs under what is called the Salt River road and through the Runge land. It runs almost due northward through the Runge land near its west line. It is a well-defined watercourse with a bed which is twenty or twenty-five feet wide and four to five feet deep, and its banks are lined with maples and willows, some of them as much as several inches in diameter. It runs from the Runge land onto the Busch land, in a northwardly direction, through the Busch land, onto plaintiff's land, and empties into plaintiff's lakes.

At some time, within a few years prior to the commencement of this suit, a dam was built by defendant Griesenauer, a tenant on the Runge land, in the bed of Belleau Creek. This dam was some four or five feet high. It was made out of boards, ten-inch planking, and dirt and driftwood, and is about twenty-five feet wide and runs across the entire bed of the stream. It is located about one hundred feet south of the line between the Runge and the Busch lands.

In addition to the dam in Belleau Creek, defendants Griesenauer and Runge constructed a lateral ditch, located just above the dam, and which runs in a northeastwardly direction through the Runge land for some two hundred or three hundred yards. At one time the water from this ditch had been allowed to flow onto the Busch land and then to find its natural way out onto the open prairie, and some of the water thus diverted eventually found its way across the Busch land, and then onto plaintiff's land and into its lakes. But there was afterwards built a dam across this ditch, on the Runge land, altering the course of the flow in the ditch and turning it back again onto the Runge land. At or about the time this dam was built the ditch was extended in a southeastwardly direction on the Runge land into a lake, with a further ditch leading out of this

lake into another lake. These two lakes were artificially built by defendant Griesenauer in the summer of 1933.

Although the year 1934, in which this suit was tried, was an unusually dry year, there was a flow of water in Belleau Creek at all times, and the artificial ditches leading from Belleau Creek onto defendants' land contained water which was conducted by these ditches to defendants" lakes, and impounded there. After the dam across Belleau Creek was constructed, no water flowed north in the Belleau Creek bed, but all the water which came down through Belleau Creek and which would otherwise have run from the Runge land down through Belleau Creek and on and across the Busch land and thence to plaintiff's land was diverted so that it ran into these ditches and filled the artificial lakes on defendants' land.

There was some conflict in the testimony respecting the character of Belleau Creek, but the great weight of the testimony shows that the creek, from the place where it rose in the hills down to and on through the Runge land, the Busch land, and plaintiff's land to the lakes, was a natural watercourse, having a definite bed and banks, and in normal times a regular flow of water throughout the year.

One Prinster, the caretaker for the Busch land, some time before the commencement of this suit, put some piling in Belleau Creek below the point where the creek ran from the Runge land onto the Busch land. The purpose of this piling was to stop the driftwood, which floated down through Belleau Creek. This piling was removed by Prinster some three weeks prior to the trial of this suit, so that there was no obstruction on the Busch land at the time of the trial.

Defendants Abeken and Otto made no defense, but consented to the granting of the relief sought.

The court found that Belleau Creek was a natural watercourse and found that defendants had obstructed the flow of the stream, and were diverting the water into the artificial lakes constructed on the Runge land, and enjoined defendants from in anywise interfering with or diverting the flow of the water in the creek, and issued a mandatory injunction commanding the defendants to remove from the creek the dam constructed in the creek on the Runge land, and to remove from the bed of the creek, between the artificial ditch and the dam, the dirt and debris deposited in the creek as a result of the dam. The court further enjoined the defendants from interfering with or diminishing the natural flow of the creek and diverting any water therefrom except for domestic uses. From this judgment defendants Runge and Griesenauer have appealed.

Appellants contend on this appeal that Belleau Creek was not shown to be a natural watercourse, and that, therefore, plaintiff is not entitled to the injunctive relief granted.

A natural watercourse is defined by our Supreme Court, in Munkres v. Kansas City, St. Joseph and Council Bluffs Railroad Co., 72 Mo. 514, as follows:

"A watercourse is a stream or brook having a definite channel for the conveyance of water. It may be made up, more or less, from surface water from rains and melting snow, but after it enters into a channel and commences to flow in its natural banks, it is no longer to be considered surface water, and it is not essential that the water should continue to flow in such stream constantly the whole year around; it is sufficient if the water usually flows in such channel, though not continually. That is, to constitute a branch or stream there must be something more than a mere surface draining, swelled by freshets and melting snow, and running occasionally in hollows and ravines, which are generally dry. The water must usually run in a definite bed or channel, though it need not flow continually the year round. But although the water from high lands and hills may unite and form a stream with a definite channel, yet if it afterward ceases to remain a channel, but spreads out over the surface of lowlands, and runs in different directions in swags and flats without any definite channel, it ceases to be a stream or watercourse."

This definition was recognized and approved in Sigler v. Inter-River Drainage District, 311 Mo. 175, 279 S. W. 50.

In the present case the evidence, as already said, abundantly shows that Belleau Creek rises in the hills some three miles or more back from the Runge land, is fed by numerous springs, flows down from the hills through the Runge land, through the Busch land, through plaintiff's land, and empties into the lakes, and that from the hills to the lakes it flows in a well defined channel, from twenty to twenty-five feet wide, and from four to five feet deep, with well defined bed and banks. There was evidence to the contrary, but we defer, as we ought, to the finding of the trial court. [Fessler v. Fessler (Mo.), 60 S. W. (2d) 17; Norton v. Norton (Mo.), 43 S. W. (2d) 1024.]

Appellants contend, however, that the evidence shows that the pilings put in the channel of the creek just north of the north line of the Runge land so obstructed the natural flow of the water in the creek that it caused the water to back up and overflow the Runge land, which seriously interfered with the desires and efforts of the defendants to develop their land for agricultural purposes, and that to avoid this overflow of their land they were compelled to cut a lateral ditch running from the creek northeastwardly so as to cause the water of the creek to flow out in that direction into a drainage ditch and thence into the lakes on plaintiff's land. The evidence shows that these pilings were put in the creek for the purpose of preventing logs and driftwood from floating down onto the Busch land in times of floods and highwaters. These pilings did not pre-

vent the water from flowing through the natural channel, but, of course, resulted in some obstruction of the flow of water when driftwood lodged against them. With this condition confronting them defendants found it desirable not only to cut the lateral ditch but also to put in the dam, which completely obstructed the flow of the water through the channel of the creek. Just why it was thought desirable to put this dam in the channel of the creek as an aid in preventing the water of the creek from backing up and overflowing defendants' land we are not advised. Moreover, the evidnece shows that defendants were not content with putting the dam in and across the creek, but found it desirable to put a dam across the lateral ditch some distance to the east of the creek to obstruct the flow of the water through the ditch to the northeast, and also to cut a ditch to the west of this dam running from the lateral ditch south over defendants' land to the artificial lakes.

The obvious purpose of defendants' activities was not to prevent the water of the creek from going upon and overflowing their land, so as to make it suitable for agriculture, but was to gather and flow the water from the creek onto their land and thus supply and maintain their artificial lakes.

Furthermore, the evidence shows that defendants sought to sell the water from Belleau Creek to the proprietors of adjoining lands on the east, and also leased to another party the privilege of duck hunting on the artificial lakes.

The evidence is very convincing that the defendants were desirous of impounding the water of Belleau Creek on their land so as to make and maintain artificial lakes suitable for duck hunting, and that it was for this purpose that they put in the dams and cut the ditches resulting in the flowing of the water from the creek onto their land.

Appellants urge in argument that plaintiff did not complain when the pilings were put across the channel of the creek, that plaintiff knew what had been done, and acquiesced for a number of years in this obstruction, that plaintiff stood by and saw defendants suffer the consequences of this obstruction, and saw defendants spending money and efforts to obtain relief therefrom, and that plaintiff, therefore, ought not now be heard to complain. We cannot agree with this view. As already shown, the money and efforts expended by defendants was not for the purpose of getting relief from the effects of the pilings put in the creek, but for the purpose of diverting the water from the creek and flowing it into artificial lakes on their land.

Appellants further contend that their evidence shows the digging of a drainage ditch along the east side of the Busch land leading into plaintiff's land, and that plaintiff contributed $100 to the expense of digging this ditch, and appellants seem to contend that this was

done for the purpose of changing the channel of Belleau Creek so that the water of the creek would flow through the lateral ditch dug by defendants, and thence over the prairie and through the drainage ditch to the lakes on plaintiff's land. However, the evidence shows no such purpose. On the contrary, the evidence shows that the drainage ditch was dug for the purpose of draining surface water from the adjacent land, and that plaintiff contributed to the expense of the ditch so as to get some of this surface water into its lakes. Moreover, as already shown, defendants put a dam in the lateral ditch, and dug another ditch just to the west of the dam, leading south from the lateral ditch, so as to flow the water from the creek south into the artificial lakes on defendants' land. This performance does not very well comport with a purpose to change the channel of the creek so as to flow its water, through the lateral ditch and drainage ditch, into plaintiff's lakes.

There was evidence on behalf of appellants that when the Runge land was acquired by Albert Runge in 1894 the west bank of the creek was considerably higher than the east bank, and that he constructed a levee through the land on the east bank of the creek, and we understand appellants contend that on account of this levee the creek became an artificial rather than a natural watercourse. Assuming that Mr. Runge raised the east bank of the creek in order to confine its overflow or flood water that did not convert the creek into an artificial watercourse. Besides, the cases hold that even if a watercourse is entirely artificial riparian rights thereto may be acquired by prescription. [Greisinger v. Klinhardt (Mo.), 9 S. W. (2d) 978; Ranney v. St. Louis & San Francisco R. Co., 137 Mo. App. 537, 119 S. W. 484; Brill v. Missouri, Kansas & Texas Ry. Co., 161 Mo. App. 472, 144 S. W. 174.]

The Commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court.

The judgment of the circuit court is accordingly affirmed. *Hostetter, P. J.,* and *McCullen, J.,* concur; *Becker, J.,* absent.