GEORGE N. ELDER, Respondent, v. J. M. DELCOUR, Appellant, No. 44247—269 S. W. (2d) 17.

Court en Banc, June 14, 1954.

*George F. Addison, W. E. Seay, Jay White* and *Lynn Bradford* for appellant.

*L. Clark McNeill* and *Samuel Richeson* for respondent.

*John M. Dalton*, Attorney General, *Paul N. Chitwood*, Assistant Attorney General, *R. A. Brown, Jr.*, and *Lon S. Haymes*, amici curiae.

█ DALTON, J.—This is an action for a declaratory judgment concerning the right to float and fish the Meramec River where it flows across defendant's farm in Dent County several miles upstream from the mouth of Crooked Creek. Certain additional rights directly connected with the use of the river for the purposes mentioned are also claimed. Plaintiff seeks to establish his legal rights with reference to certain specific matters in view of the factual situation, which has been stipulated by the parties.

The trial court entered a judgment in accordance with plaintiff's contentions and defendant took an appeal to the Springfield Court of Appeals, where the judgment of the trial court was reversed and a judgment entered favorable to the contentions of the defendant. Elder v. Delcour (Mo. App.), 263 S.W. (2d) 221. In view of the importance of the questions involved and the general interest therein, this court ordered the cause transferred to this court for further consideration and to re-examine the existing law. Section 10, Article V, Constitution of Missouri 1945. We shall review the cause as on original appeal.

█ As stated, the specific facts out of which the present controversy arose have been stipulated by the parties. In this case we are limited to these facts and such other facts as may be judicially noticed. Courts are not presumed to be ignorant of matters about which the general public knows and, accordingly, courts may take judicial notice of facts which are matters of common knowledge. Bowman v. Kansas City, 361 Mo. 14, 233 S.W. (2d) 26, 31. The issues presented here are judicial questions.

It is stipulated that defendant is the owner of a farm in Section 2, Township 35 North, Range 4 West in Dent County; that defendant resides on the farm with his family; that defendant's property is fenced and used by defendant as a farm; and that at various points thereon defendant has placed signs reading: "Posted—no hunting, fishing or trespassing without permission."

█ It is agreed that the Meramec River rises in the southeastern portion of Dent County some twenty-five miles by airline from defendant's farm, but a considerably greater distance if one should follow the meandering of the river; that the river flows across and through the lands owned by defendant; and that, at the point where the river crosses the defendant's property, "this river is navigable in fact by canoes, rowboats, and other small floating craft of similar size and nature, but that it is not navigable in fact by larger boats and vessels." It is further admitted that "through that period of time in the past when logs and timber were customarily transported by █

floating'' (which we understand to mean prior to the construction of hard surfaced roads and the use of automotive transportation) ''this stream was used for the purpose of floating logs and timber at the point of its crossing of the Delcour land and for many miles up the stream from this point.'' It is further agreed that the stream is well stocked with fish; and that, at many points above and below defendant's farm, ''the stream is heavily fished by sportsmen both by wading, floating and from the bank.'' Whether the stream as it passes through defendant's farm has been so fished by sportsmen in the manner stated does not appear from the stipulation, nor does the stipulation fix the duration of time during which the stream has been so ''heavily fished'' by sportsmen. We take judicial notice of the fact that the Meramec River has long been known as a very popular fishing stream. And see State v. Wright, 201 Mo. App. 92, 208 S.W. 149, 150.

Amici curiae insist that for over one hundred years before our state highway system was established the Meramec River was continuously, and as a matter of right, used as a public highway for travel, floating, fishing and transportation of products by canoe; that such use was in recognition of the public easement therefor which had been long established and utilized; and that the existence of such use during such period should be recognized by this court. No such evidence appears in this record and we cannot take judicial notice that such conditions existed during such period on this river where it crosses the defendant's farm. Evidence of such facts has been received in other cases. United States v. Appalachian Electric Power Co., 311 U.S. 377, 85 L. Ed. 243, 265.

Plaintiff is a resident of Cole County and the holder of a state ''hunting and fishing license issued by the proper authorities of the State of Missouri whereby he is authorized to fish in said state under the laws and regulations applicable thereto.'' On May 13, 1952, he had business in Crawford County some two miles north of defendant's farm and he then traveled by automobile to a public road crossing of the Meramec River at a point south of and upstream from the farm owned by defendant. At this public road crossing, plaintiff placed a canoe in the said river and, accompanied by his wife, he proceeded to float down the stream, fishing as he went. When plaintiff arrived at the south line of defendant's farm, ''he came to an obstruction across the stream in the form of a wire watergap fence and as he was pressing this obstruction down, in order to pass over the same, he was hailed from the bank of the stream by Mr. Delcour (defendant) who in substance ordered him to stop, advised him that he (Delcour) was the owner of the property upon which he was about to enter and instructed him not to enter thereon.'' Defendant called plaintiff's attention to the fact that ''the land and stream were posted against trespassing, hunting and fishing''; and that defendant claimed

840

the ownership of the stream. Defendant ordered plaintiff to turn and go back up the stream without entering upon his property. He further threatened that if plaintiff proceeded down the stream he would consult his attorney and either prosecute or would sue for damages for trespassing as might be recommended.

At that time plaintiff advised defendant that "it was his (plaintiff's) belief and contention that he had a legal right to travel down the stream, fishing as he went * * * that in the course of the fishing it was his intention to tie up his canoe at such likely spots as he might find and (to) wade in the bed of the stream in order to fish those likely spots. * * * that in the event he found any obstruction across the stream which he was unable to remove he would then, as a matter of necessity, leave the stream and carry his canoe along the bank of the river in order to get around any such obstruction and it was his intention to stop and make camp upon the bank of the river for the purpose of eating lunch and to check his canoe for any repairs that might be needed * * * that in the event he caused any damage to the property of Mr. Delcour that he would be willing to pay any such damage but that the things that he proposed ▓▓▓ to do he claimed as a matter of legal right." Defendant again warned plaintiff not to trespass upon his property, denying to him the rights claimed and again threatened suit or prosecution in the event that plaintiff proceeded. Plaintiff, however, "pressed down the watergap obstruction and passed over the same continuing a short distance down the river to a point where he found a log jam across the river which could not be removed by him and at this point he and his wife removed the canoe from the stream and carried it along the bank of the stream and on Mr. Delcour's land for a distance of some thirty yards where they re-entered the stream. As they re-entered the stream he removed his fly rod from the canoe and waded down the bed of the stream for a distance of some one hundred yards fishing several likely spots * * *. Re-entering the canoe Mr. Elder (plaintiff) continued with his wife down the stream until they arrived at a place suitable for a camp site. At this point they left the stream, pulling the canoe upon the bank thereof where he made some minor repairs to his canoe and they ate lunch. After lunch they re-entered the stream and continued their float until they crossed off the Delcour property, proceeded to a public road crossing of the stream near Cook Station, where they removed their canoe from the river."

The term "log jam," as used in the stipulation, is not defined, but we infer that it means an accumulation of logs, commercially cut or otherwise, which have floated in and lodged so as to completely block the use of the channel of the river for transportation by water.

The trial court determined the issues presented by the pleadings and declared the law respecting plaintiff's rights as follows: "That the Meramec River at the place in question and as described in the

petition is public water and subject to travel by plaintiff and those who desire to wade it or to float down it in boats * * * that plaintiff has a legal right to fish in said stream subject to the regulations of the Missouri Conservation Commission and the Laws of Missouri * * *.'' The court declared that plaintiff had ''the legal right to carry his boat around obstacles in the river where obstructions preclude the passage of his boat, subject to liability for damage he might inflict on defendant's property * * * (and) the legal right to tie up his boat or to camp on said stream as long as he uses the stream bed, gravel bars and clearly recognizable area over which the stream flows during its normal stages.'' The trial court further ordered ''that defendant desist in his efforts to hinder or close such free passage up and down the said stream.''

Plaintiff by his petition sought to establish a right to stand on the privately owned banks of the river for the purpose of fishing therein but the stipulation presented no such factual situation. The issue was not decided and is not before us on this appeal. Plaintiff, as respondent here, does not claim such a right as an incident to navigation. Members of the public have been denied such rights in other jurisdictions. See Willow River Club v. Wade, 100 Wis. 86, 101, 103, 76 N.W. 273.

Defendant, as appellant here, contends that the judgment entered by the trial court is erroneous because the Meramec River at the point in question in this case is a non-navigable stream; that the owner without reservation of land adjacent to the non-navigable stream has the legal title to all of the lands lying between the meander line and the middle thread of the stream; that appellant, being the fee simple owner of the land through which the Meramec River flows, has the absolute right of ownership to the bed of the river as well as to the land on each side; that the Meramec River at the point in question is not a public highway, nor open to free and unrestricted use for the purpose of passage and navigation; and that the waters of said river at said point are private waters and the appellant as owner thereof has the exclusive right to fish therein.

This case, involving as it does the relative rights of plaintiff-respondent as a member of the public and those of defendant-appellant as the riparian owner of both banks of the Meramec River at the place in ▮▮ question, must be decided with reference to its own peculiar facts.

▮▮ We must first determine whether the Meramec River at the point in question is a ''navigable river'' in the broad sense in which that term is used when a determination of title to the bed of a stream is involved. The rule adopted in this state to determine whether or not title to the bed of a river is vested in the riparian owners is the rule adopted in the Federal Courts. The rule is stated in Slovensky v. O'Reilly (Mo. Sup.), 233 S.W. 478, 481, as follows: '' 'The test

of navigability of a river, as stated by the Supreme Court of the United States, is that those rivers are navigable in law when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water. Another test is whether, in its ordinary state, a stream or body of water has capacity and suitability for the usual purpose of navigation, ascending or descending, by vessels such as are employed in the ordinary purposes of commerce, whether foreign or inland, and whether steam or sail vessels.' There are cases which call rafting logs commerce upon the stream, and broaden the view of the foregoing rule as to navigable streams. In Missouri, however, we have held to the more rigid rule, and with some aggressiveness.'' And see 56 Am. Jur. 645, Waters, Sec. 179. The determination of the rights of riparian proprietors in public waters is a question which each state must decide for itself. Barney v. Keokuk, 94 U.S. 324, 338, 24 L. Ed. 224; State v. Korrer, 127 Minn. 60, 148 N.W. 617, 619. The Slovensky case involved title to real estate on the Meramec River in Crawford County and in the absence of evidence to the contrary, the court took judicial knowledge of the fact that the Meramec River was ''a non-navigable river.'' (233 S.W. 478, 482).

The federal rule, however, for determining whether a stream is ''navigable water'' for the purpose of governmental regulation appears to be broader that the rule stated in the Slovensky case. The rule is stated in United States v. The Montello, etc., 20 Wall. 430, 22 L. Ed. 394, where the court said: ''It would be a narrow rule to hold that in this country, unless a river was capable of being navigated by steam or sail vessels, it could not be treated as a public highway. The capability of use by the public for purposes of transportation and commerce affords the true criterion of the navigability of a river,. rather than the extent and manner of that use. If it be capable in its natural state of being used for purposes of commerce, no matter in what mode the commerce may be conducted, it is navigable in fact, and becomes in law a public river or highway. Vessels of any kind that can float upon the water, whether propelled by animal power, by the wind, or by the agency of steam, are, or may become, the mode by which a vast commerce can be conducted, and it would be a mischievous rule that would exclude either in determining the navigability of a river. It is not, however, as Chief Justice Shaw said (Rowe v. Bridge Co., 21 Pick., 344), 'Every small creek in which a fishing skiff or gunning canoe can be made to float at high water, which is deemed navigable; but, in order to give it the character of a navigable stream, it must be generally and commonly useful to some purpose of trade or agriculture.' '' And for the evidence upon which the United States Supreme Court determined the navigability in fact of the New River in West Virginia see United States v. Appalachian

Electric Power Co., supra, 85 L. Ed. 243, 265. In that case the court pointed out that a stream may be navigable, for the purpose of Federal control "despite the obstruction of falls, rapids, sandbars, carries, or shifting currents." (85 L. Ed. 243, 253).

In determining the character of the Meramec River at the point it crosses appellant's property, we may not disregard the admitted fact "that through that period of time in the past when logs and timber were customarily transported by floating, this stream was used for the purpose of floating logs ▇▇ and timber at the point of its crossing of the Delcour land and for many miles up the stream from this point." There is no suggestion that the type, kind and character of the river has changed, or that the amount of its flow has decreased since the time of its prior use for the purposes of commerce mentioned. It is admitted that the river in its present state, where it crosses appellant's property, "is navigable in fact by canoes, rowboats, and other small floating craft of similar size and nature, but that it is not navigable in fact by larger boats and vessels." These facts concerning the size and use of the river are the essential facts upon which the legal rights of the respondent, as a member of the public, must necessarily depend.

In view of the admitted facts, it is nevertheless our view, that the Meramec River at the point in question is a "non-navigable river" as that term is used in this state for the purpose of determining title and whether or not appellant, as the owner of the farm through which the river flows and as the riparian owner of both banks of the river, is the owner (subject to the exceptions, limitations and burdens hereinafter referred to) of the bed of the river from the meander line on one shore to the meander line on the opposite shore. Under similar facts the courts of this state have repeatedly taken judicial notice of or have held that such a stream is not a "navigable river" as the term is used in this state where title to the bed of the river is involved. T. L. Wright Lumber Co. v. Ripley Co., 270 Mo. 121, 192 S.W. 996, 999(2); State ex rel. Applegate v. Taylor, 224 Mo. 393, 484, 123 S.W. 892; Slovensky v. O'Reilly (Mo. Sup.), 233 S.W. 478, 481; Hobart-Lee Tie Co. v. Grabner, 206 Mo. App. 96, 219 S.W. 975, 976; Grobe v. Energy Coal and Supply Co., 217 Mo. App. 342, 275 S.W. 67, 68(4); McKinney v. Northcutt, 114 Mo. App. 146, 160, 89 S.W. 351; Cambest v. McComas Hydro-Electric Co., 212 Mo. App. 325, 245 S.W. 598. In the case of T. L. Wright Lumber Co., 270 Mo. 121, 192 S.W. 996, 998, this court held that where a government patent conveyed land adjacent to a non-navigable river (Current River), the patent conveyed all the land between the meander line on shore and the middle thread of the river, including an island which was not mentioned in the survey, in the absence of an express reservation or the existence of a previous patent or survey, covering such island.

844

And see Bratschi v. Loesch, 330 Mo. 697, 51 S.W. (2d) 69, 71; Hobart-Lee Tie Co. v. Grabner, supra, 219 S.W. 975, 976; Brown v. Wilson (Mo. App.), 131 S.W. (2d) 848, 851(5-7). Appellant was therefore the owner of the bed of the river across and through his farm, title was not retained in the public, but appellant was not the absolute owner thereof and we must further determine the exceptions and burdens to which his ownership was subject.

While it does not appear from the stipulation of facts as to when the title to the farm in question emanated from the United States, nevertheless any such conveyance was subject to the existing law at that time, since it is well settled that a ''grant must be interpreted, understood, limited and restrained, according to the law of the country, in force at the time when the grant was made.'' O'Fallon v. Daggett, 4 Mo. 343, 347; Cooley v. Golden, 117 Mo. 33, 23 S.W. 100. And see Benson v. Morrow, 61 Mo. 345, 350 (recognizing the established law that ownership by a riparian owner to the central line or thread of a so-called non-navigable river was subject to an easement for the public to pass along and over it with boats, rafts and river craft); State ex rel. Citizens Electric Lighting & Power Co. v. Longfellow, 169 Mo. 109, 121-128, 69 S.W. 374. As early as June 4, 1814, an Act of Congress providing for the government of the territory of Missouri had been passed and approved which provided that ''The Mississippi and Missouri rivers, and the navigable waters flowing into them, and the carrying places between the same, shall be common highways, and forever free to the people of the said territory and to the citizens of the United States, without any tax, duty or impost therefor.'' 2 U.S. Statutes at Large, 743, 747, Sec. 15; Missouri Territorial Laws, 1804-1824, Vol. I, p. 13, V.A.M.S. Vol. I, p. 60, Sec. 15. Somewhat similar provisions (where the words ''navigable rivers and waters leading to the same'' are used) appear in the Act of Congress, March 6, 1820, Sec. 2, V.A.M.S. Vol. I, p. 64, Sec. 2 (the enabling Act for the admission of the State of Missouri) and in the Constitution of Missouri 1820, paragraph two of Art. X, V.A.M.S. Vol. I, p. 93; Constitution of Missouri 1865, Sec. 2, of Art. XI, V.A.M.S. Vol. I, p. 145; Constitution of Missouri 1875, Art. I, V.A.M.S. Vol. I, p. 167. Any title which appellant may have acquired to the bed of the river in question was necessarily subject to the applicable law in force at the time, and such applicable law may not be disregarded in determining whether the Meramec River, at the place in question, is in fact a public highway and open for public travel by boat and wading.

Clearly appellant's title and ownership of the river bed was not absolute as contended by him, but was subject to the burdens imposed by the river. He could not divert or obstruct the flow of the water without civil and criminal liability. Secs. 560.545 and 236.240 RSMo 1949; Welton v. Martin, 7 Mo. 307, 309; Greisinger v. Klinhardt, 321 Mo. 186, 9 S.W. (2d) 978, 980; Keener v. Sharp, 341 Mo. 1192, 111

S.W. (2d) 118, 120. He could not cut loose or set adrift a raft or boat or canoe tied to a tree on the banks of the stream, although he owned the banks. Sec. 560.550 RSMo 1949; State v. Wright, 201 Mo. App. 92, 208 S.W. 149. He could not divert the water to a private lake on his own land to the exclusion of others. Dardenne Realty Co. v. Abeken, 232 Mo. App. 945, 106 S.W. (2d) 966. He could not obstruct the free passage of fish in the stream without criminal liability. Sec. 252.200 RSMo 1949. He could not build a dam in a water course on his own land without proceeding as required by Chap. 236 RSMo 1949, Sec. 236.010 RSMo 1949 et seq. If the river formed the boundary line between appellant's property and that of another, the boundary line and ownership would change with changes in the center or thread of the stream. Bratschi v. Loesch, supra, 51 S.W. (2d) 69, 72.

Appellant contends that in view of an act of the Legislature declaring the Meramec River to be a public highway up to the mouth of Crooked Creek (Laws of Missouri, 1839, p. 83), which act was subsequently repealed (Laws of Missouri 1856-57, p. 172), the Legislature adopted the mouth of Crooked Creek as the uppermost point the stream could be a public highway and that it could not be a public highway above that point. The action of the Legislature, as mentioned, had no bearing on the issues here presented where the factual situation controls. See State ex rel. Applegate v. Taylor, supra; and T. L. Wright Lumber Co. v. Ripley Co., supra.

In determining whether appellant's land within the water area of the river was a public highway and so subject to an easement for public travel by boat and wading, we must review the applicable decisions of the courts of this state. In the case of Hobart-Lee Tie Co. v. Grabner, supra, defendant was engaged in the business of buying ties and floating them in rafts on the Gasconade River to a point in Pulaski county where they were drawn out on the north bank of the river and transported without permission across "an island or gravel bar" leased by the plaintiff from the owner of such north bank of the river to a nearby public road. Plaintiff obtained an injunction against defendant's such use of plaintiff's lands on the bank of the river and the judgment was affirmed on appeal, the court holding that the river, at the point in question was "navigable or floatable" and was a public highway, but that the use of the north bank of the river by defendant was "broader than a mere right of passage over the stream as a highway"; and that defendant's use of the north bank of the river was "a constant trespass of the plaintiff's acquired rights." The court said: "We must, therefore, hold that the river, at the point where this controversy arises, is navigable or floatable in the sense that it may be used as a highway, but not in the sense that the bed of the stream was retained in the public and that any islands formed in the stream would become the property of the public. * * * We take judicial notice of the fact that the point on the Gasconade river, where this cause of

action arose, is near its source; that on the typography of the country is stamped the grandeur of the magnificent Ozark uplift; that the stream throughout the county of Pulaski is at many places narrow and its waters swift and beautiful; that in the beds of the Ozark streams there are shoals and bars which furnish a happy camping ground for the erstwhile fisherman; an occasional rapid joins in the chorus of nature; and that while actually capable of floating logs, ties, and commerce of this character, they are not navigable streams with the bed of the river in the public." 219 S.W. 975, 976-977.

In the case of Weller v. Missouri Lumber & Mining Co., 176 Mo. App. 243, 256, 161 S.W. 853, the court said: "The law of this state, following the general trend of authority in this country, is that a stream capable of transporting commerce in any manner in which such commerce is ordinarily conducted is a navigable or floatable stream and is a public highway. * * * If plaintiff's evidence is to be believed, the slough in question was originally the main channel of the river (Current River) and had always continued at ordinary stages of the river to convey a part of its waters, and was capable much of the time of floating ties and logs. * * * Proof that to get logs to follow that arm of the river a boom was necessary, or that it was necessary to push the logs in the slough by means of poles and other contrivances, would not be conclusive evidence that the slough was not navigable * * *." And see State v. Wright, supra.

In the case of McKinney v. Northcutt, 114 Mo. App. 146, 89 S.W. 351, it was held that Indian Creek, a tributary of the Meramec River in Washington and Franklin counties was such a stream as the public had a right to float railroad ties in and that for such purpose it was a public highway. And see, Northcutt v. John O. Long Tie & Timber Co., 187 Mo. App. 386, 173 S.W. 15, where the court upheld the right of the public to use a stream as a public highway for floating ties and timber. In the McKinney case the court reviewed the detailed evidence concerning the size and use of the stream for floating railroad ties and the law governing the facts and quoted from Farnham on Waters and Water Rights, Vol. 1, Sec. 25 to the effect that " 'the right of navigation does not authorize interference with the bed of the stream or with the banks, or the destruction of property on the banks. The right to float is but a right of passage, and includes only such rights as are incident to the use of the stream for that purpose and necessary to render such use reasonably available.' " The Court said: "So we find that by concurrence of authorities, a stream capable of transporting rafts of railroad ties, as in this case, for several months during the spring of the year, without the aid of men on the banks thereof, is navigable within the meaning of the law for that purpose and subject to the use of the public therefor, and the rights of the riparian owners to the soil adjacent to and underlying the bed of such stream are subject to this right or easement in the public, which rests upon the

necessities of commerce; and * * * the adjacent owners would have no right to interfere with one using the stream for the commercial purposes indicated. Respondent had a right to occupy the stream in floating his ties to market without inflicting injury upon the adjacent property, and the appellants had no right to obstruct said stream as shown in the evidence, or otherwise interfere with respondent in the exercise of his privilege.'' And see Grobe v. Energy Coal and Supply Co., supra, 275 S.W. 67, 68 (referring to Black River as ''no more than a public highway upon which the public have certain rights'' but recognizing the riparian owner's right to the gravel in the bed of the river) and Benson v. Morrow, supra, decided in 1875, recognizing the rule that, upon all rivers not navigable, the owner of land adjoining the river is prima facie the owner of the soil to the central line or thread of the river ''subject to an easement for the public to pass along and over it with boats, rafts and river craft.'' And see 56 Am. Jur., [26] 653, Waters, Sec. 188; Lamprey v. Metcalf, 52 Minn. 181, 53 N.W. 1139, 1143; Gaston v. Mace, 33 W. Va. 14, 10 S.E. 69, 5 L.R.A. 392, 396.

In view of the admitted facts concerning the capacity, suitability and use of the river at the place in question for public and commercial purposes, the provisions of the several Acts of Congress and the Constitutions mentioned and the well established applicable case law of this state, we must and do hold that the waters of the Meramec River are public waters and the submerged area of its channel over and across appellant's farm is a public highway for travel and passage by floating and by wading, for business or for pleasure, and that in traveling the course of the stream by canoe or wading, respondent was not a trespasser on the property of appellant.

Appellant has made no attack upon that part of the judgment dealing with matters directly incident and necessary to the use of the stream as a public highway for travel, including the right to carry around obstructions in the channel of the river which preclude the passage of boats, but subject to liability for damage to appellant's property. No damage to appellant's ''wire watergap fence'' is claimed.

We next consider appellant's contention that the waters of said river are private waters and that appellant as the owner thereof has the exclusive right to fish therein. We have ruled that the waters in question here are public waters and that the Meramec River at the place in question is a public floatable highway for travel, but that appellant is the owner of the bed of the stream, subject to the use of the stream as a public highway, as stated. The right of the public to fish in such public waters under the facts stated and to use them for pleasure and recreation has not been previously decided in this state.

In support of his contention that the waters in question are private waters and the owner has the exclusive right to fish therein, appellant

cites Gratz v. McKee, 270 Fed. 713, 721, affirmed 260 U.S. 127, 136. That case is not controlling here. The Supreme Court in that case (260 U.S. 127, 135) said: "It is enough that there is a plain distinction between such creatures (mussels, sunk in the mud of the river bed) and game birds or freely moving fish, that may shift to another jurisdiction without regard to the will of land owner or State. Such birds and fishes are not even in the possession of man." Appellant also cites Herrin v. Sutherland, 74 Mont. 587, 241 P. 328, 42 A.L.R. 937, 942, where the court said: "It would seem clear that a man has no right to fish where he has no right to be. So it is held uniformly that the public have no right to fish in a non-navigable body of water, the bed of which is owned privately." And see Kinney on Irrigation and Water Rights (2d Ed.) Vol. I, p. 605. Respondent, however, was not a trespasser and he was fishing where he had a lawful right to be wading in or floating upon public waters, which were flowing down a public highway.

In this state the title and ownership of fish in a stream is in the state, until actually reduced to possession at a time and in a manner permitted by law. Section 252.030 RSMo 1949; Reid v. Ross (Mo. Sup.), 46 S.W. (2d) 567, 568; State ex rel. Wear v. Springfield Gas & Electric Co. (Mo. App.), 204 S.W. 942, 945(4) ; State v. Taylor, 358 Mo. 279, 214 S.W. (2d) 34, 36(2d) ; 22 Am. Jur., p. 666, Fish and Fisheries, Sec. 2; 36 C.J.S. 832, Sec. 2. Since the ownership of the fish in the stream belonged to the state and since respondent was not a trespasser in passing down the stream by boat or by wading, he had the right to fish and to take fish from the stream in a lawful manner.

In the State of Wisconsin, where the background of law is similar to the law of this state, the same conclusion was reached in the case of Willow River Club v. Wade, supra, decided in 1898. In that case the court pointed out that the Ordinance of 1787 for the government of the Northwest Territory, the enabling Act of Congress for the admission of the State of Wisconsin and the Constitution of that State provided that "the river Mississippi and the navigable waters leading into the Mississippi and St. Lawrence, and the carrying places between the same, shall be common highways and forever free, as well to the inhabitants of the state, as to the citizens of the United States * * *." The court said: "It has frequently been held that the rivers of this state, capable of floating the products of the country—such as logs and rafts of lumber—to mill or market, are common public highways * * * The right to drive logs or lumber down a public navigable stream would seem to include the right to do the things essential to facilitate the drive, so long as the drivers keep within the limits of the stream. The same rule as to what constitutes a public navigable river has been applied to the Little Wolf River * * *." (100 Wis. 86, 100, 101). The court further pointed out that Willow River was not meandered; that in Wisconsin the ownership of riparian proprietors extended to the

center or thread of the stream, subject, if such stream be navigable, to the right of the public to its use as a public highway; that plaintiff owned the land on both sides of the stream, and hence had title to the bed of the stream; that the mere fact that the title to the bed of the stream was in the plaintiff was not necessarily conclusive that the plaintiff had title to the fish in the river; and that the public should have the right to fish in all the public navigable waters, rivers and streams of the state. The court held that: "Since the defendant kept within the banks of the river, within the limits of the public highway, his fishing was nothing more than the exercise of a right common to the public * * * that the Willow river was a public navigable stream, and the defendant was not guilty of trespass by going upon it, as he did, catching the fish in question." (100 Wis. 86, 103). And see Kenney on Waters & Irrigation Rights, Vol. I, p. 606, Sec. 361; Diana Shooting Club v. Husting, 156 Wis. 261, 145 N.W. 816, 818; Nekoosa Edwards Paper Co. v. Railroad Commission, 201 Wis. 40, 228 N.W. 144, 147; Lamprey v. Metcalf, supra, 53 N.W. 1139, 1144; Rushton ex rel. Hoffmaster v. Taggart, 306 Mich. 432, 11 N.W. (2d) 193.

Our holding is not in conflict with the rule announced in Dennig v. Graham, 227 Mo. App. 717, 59 S.W. (2d) 699, to the effect that Greer Spring and Greer Spring Branch were private waters and the defendant had no right to enter upon or fish therein.

The judgment of the trial court is affirmed. *Hyde, Hollingsworth, Leedy, JJ., Conkling, C.J.,* and *Bennick* and *Cave,* Special Judges, concur.