Warren W. TONKINS, Appellant,

v.

MONARCH BUILDING MATERIALS COR-
PORATION, a Corporation, Respondent.

No. 48077.

Supreme Court of Missouri,

Division No. 1.

June 12, 1961.

John L. Stahlhuth, Boedeker, Weil & McMahon, Clayton, William L. Mason, Jr., St. Louis, for appellant.

Thurman, Nixon & Blackwell, J. W. Thurman, Hillsboro, for respondent.

HOLLINGSWORTH, Judge.

Plaintiff, alleging ownership of certain real estate lying south of the Meramec River in St. Louis County, seeks to recover actual damages in the sum of $75,000 and punitive damages in the sum of $50,000 for sand and gravel allegedly wrongfully removed and appropriated by defendant from the portion of the bed of said river lying between the bank and the thread of the stream as it courses along the north side of plaintiff's land. The jury returned a verdict for defendant and plaintiff has appealed from the judgment accordingly rendered.

The Meramec River originates in South Central Missouri and with much meandering flows in a generally northeastwardly direction until it empties into the Mississippi River some 20 miles, more or less, south of the City of St. Louis. From a point near the City of Fenton until it empties into the Mississippi, the Meramec constitutes the boundary line between St. Louis County lying generally to the north thereof and Jefferson County lying generally to its south. At the point in question, however, its meanderings are such that it turns and flows in a westerly direction for a distance before reverting to its general course, resulting in a portion of St. Louis County (in which plaintiff's land is situate) being on its south bank and a portion of Jefferson County being situate on its northern bank.

Defendant is a Missouri corporation, engaged in dredging sand and gravel from the river pursuant to authorization granted it by the Corps of Engineers, U. S. Army. The plat attached to the authorization granted defendant shows the area of its operations to be situate between Mile 12.0 and Mile 12.65 above the mouth of the river. Its plant is on the north bank of the river directly across from the land allegedly owned by plaintiff.

The amended petition, upon which the case was tried, alleged, insofar as here material, plaintiff's ownership of certain of the lots and blocks in a subdivision designated as "Club City", which was laid out in St. Louis County at the instance of plaintiff and others in 1923; that said land was bordered on the north by the Meramec River and extended to the center line thereof; that defendant for many years had wrongfully removed and appropriated sand and gravel of the value of $50,000 from plaintiff's property; and "that the Meramec River at the places mentioned in this petition is a nonnavigable stream." Defendant's answer denied each allegation of the amended petition.

The "Statement of Facts" set forth in plaintiff's brief recites the evidence upon which he predicates his right to recover in this manner: "In 1954 defendant began to dredge and pump sand and gravel from and out of said river opposite its said property and was continuing to do so in 1958; it bought its land for the purpose of doing so, and during this period it took as much as 1,200 tons of sand and gravel out of the stream in a day. This sand and gravel was worth $0.05 per ton. Said material was removed from the river bed without the consent of plaintiff. There is no evidence that defendant paid plaintiff anything at any time on any account. The evidence is in dispute as to whether or not defendant took any material from the bed of the stream between the center thereof and the bank thereof owned by plaintiff. In this area, the depth of the river ranges from around 10 to 20 feet down to 'next to nothing'; there is no regular passenger service; no mail service; and commercial traffic is observed only in the Spring when the river floods. It is an area of pleasure boats, fishing boats, canoes and bathers."

Plaintiff's sole contention on this appeal is thus stated:

"The Court erred in refusing to give Instruction No. A, for the reasons that:

"A) Plaintiff adduced evidence to the effect that the Meramec River in the area in question was not susceptible of being used, in its ordinary condition, as a highway for commerce over which trade and travel could be conducted in customary modes of trade and travel on water, in that plaintiff's evidence was to the effect that in this area the depth of the river ranges from around 10 to 20 feet down to 'next to nothing'; there is no regular passenger service; no mail service; and commercial traffic is observed only in the Spring when the river floods. It is an area of pleasure boats, fishing boats, canoes and bathers.

"B) There was no evidence to the contrary.

"C) These facts being undisputed, there was no issue in the case as to whether the river at this point was navigable or non-navigable, because under such undisputed evidence the river was there non-navigable, as a matter of law.

"D) If the river at this point was non-navigable, then plaintiff owned to the center of the river (middle thread of the river) under Missouri law.

"E) If he so owned, he was entitled to be compensated for sand and gravel taken from his side of the center.

"F) Therefore though refused Instruction A failed to submit an issue of navigability or non-navigability of the stream, it was a proper Instruction since it submitted all material, disputed, ultimate facts in issue.

"G) It was therefore prejudicial error for the Court to refuse it because plaintiff was thereby forced to give Instructions which submitted to the jury an issue of law foreign to the factual matters to be determined by the jury."

Defendant takes strong exception to the fairness of plaintiff's statement and, after undertaking an extended statement, asserts that the evidence shows that plaintiff has long since sold substantial portions of the land which he claimed to own adjacent to the area from which he contended defendant had wrongfully removed sand and gravel; that there was no substantial evidence (a) as to navigability of the Meramec, nor (b) that defendant removed sand and gravel from property belonging to plaintiff; and that, therefore, the court (1) erred in refusing defendant's motions for a directed verdict at the close of plaintiff's case and at the close of all of the evidence; (2) did not err in refusing plaintiff's Instruction A. The view we take of the case, however, makes it unnecessary that we consider any phase of the case other than the sole ground upon which plaintiff bases his appeal. For the reasons hereinafter stated, we have concluded that the judgment must be affirmed.

■ Plaintiff asserts as a major premise of his brief that he, having adduced evidence tending to show nonnavigability of the river at the point in question, and defendant, having (as plaintiff contends) adduced no evidence to the contrary, there was no issue in the case as to whether the river at this point was navigable or nonnavigable. We think plaintiff errs in so contending. Not only did defendant's answer deny the allegation of plaintiff's amended petition that the river at this point was nonnavigable, but at the close of plaintiff's case in chief defendant moved for a directed verdict upon several grounds, among which were:

"1. Plaintiff's evidence wholly fails to show any right of recovery against said defendant.

"2. Plaintiff's evidence fails to show that the Meramec River is a [nonnavigable][1]

1. The motion erroneously uses the word "navigable" instead of the word "non-navigable" as set forth in the brackets above inserted by the writer of this opinion. The error is, however, so apparent on its face that its intendment and the

stream as contemplated by the laws of the State of Missouri and of the United States of America."

Following denial of the motion, defendant adduced evidence tending to show the contentions upon which its defense was predicated. We shall refer only to the evidence bearing upon plaintiff's contention that there was no issue of nonnavigability of the river at the point in question. During direct examination of defendant's president, John L. Mothershead, defendant offered its Exhibit 2 (hereinabove referred to as the authorization issued to defendant by U. S. Corps of Engineers for dredging a specifically described area within the river as it flows between plaintiff's land and defendant's plant). Upon objection being made to its relevancy, counsel for defendant explained its materiality to the court in these words: "[I]t shows the government engineers recognize it as a navigable stream. They attempt to supervise as to what can be done and can't be done. You certainly can't pump gravel up there unless they authorize it." Plaintiff then admitted the authenticity of the exhibit and admitted that the U. S. Corps of Engineers was duly vested with authority to issue or deny such permits. The witness, Mothershead, further testified: The plat defines the space in which defendant is authorized to operate, gives directions as to what defendant can and cannot do; that the Corps constantly supervises defendant's operations and that the authorization is still in effect. The court thereupon held the exhibit to be some evidence of the river's navigability at that point and, over plaintiff's objection, admitted it into evidence. There was also evidence that the river was 400–600 feet wide from bank to bank at this point and that the main channel, approximately 75 feet in width at ordinary stage, flowed along the bank adjacent to the land allegedly owned by plaintiff. One witness testified that there was a "considerable lot" of

traffic, such as motor boats, fishing boats, pleasure boats and "boats of all sorts."

At the close of all of the evidence, defendant again filed and the court again denied its motion for a directed verdict predicated upon the same grounds as the motion filed at the close of plaintiff's case in chief.

The record next shows that the court, at the request of plaintiff, gave Instruction P–1, submitting the issue as follows:

"* * * if you find and believe from the evidence that the plaintiff * * * was during the time mentioned in the evidence the owner of land in St. Louis County, Missouri along the Meramec River as such River flows between Jefferson County, Missouri and St. Louis County, Missouri, *and if you further find and believe from the evidence that the Meramec River at such place was a nonnavigable stream at all times mentioned in the evidence,* and if you further find and believe from the evidence that the defendant * * *, through its agents and servants did remove sand and gravel or sand or gravel from that portion of the Meramec River in St. Louis County, Missouri directly North of land owned by plaintiff and South of the thread of the Meramec River at such place, if you so find, and if you further find that such sand and gravel or sand or gravel was removed without the consent of the plaintiff and plaintiff was not paid therefor, then your verdict will be in favor of the plaintiff and against defendant, * * *."

The court, also at the request of plaintiff, defined "navigability" as follows:

"* * * the test of navigability of a River is whether it is *susceptible* of being used in its ordinary condition as a highway for commerce over which trade and travel are or *may be* conducted in customary modes of trade and travel on water and that the fact that a stream is navigable in fact by canoes, row boats and other small

import of the assignment are clear and will be so treated. See T. L. Wright

Lumber Co. v. Ripley County, **270 Mo.** 121, 192 S.W. 996, 999 [2].

craft, but is not navigable by larger boats and vessels, does not make it a navigable stream." (Emphasis ours.)

At the instance of defendant, the court merely instructed the jury that "the burden of proof is on the plaintiff to establish by the preponderance or greater weight of the evidence, the facts necessary to a verdict in his favor under these instructions. * * *"

Then, and not until then, according to the record, did the court consider and refuse plaintiff's Instruction A, which was identical in form with P–1, supra, except that it omits the requirement of a finding of nonnavigability of the Meramec at the point in question. The record, however, does not show whether said instruction was proffered to the court prior, contemporaneously with or subsequent to the proffer of Instruction P–1.

Much has been written as to what constitutes a navigable stream and the proper method of determining that fact. "The legal concept of navigability embraces both public and private interests, and cannot be determined by a formula which fits every type of stream under all circumstances and at all times. Each determination as to navigability must rest on the facts and circumstances of the particular case. To these facts and circumstances, however, certain judicial standards are to be applied for determining whether the complex of the conditions with respect to the capacity of the water for use in commerce renders it a navigable stream. Diverse elements enter into the application of the legal tests as to navigability, and such tests must take into consideration variations in the uses to which streams may be put and in the density of traffic." 65 C.J.S. Navigable Waters § 3, pp. 47–48; United States v. Appalachian Electric Power Co., 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243. It has been held that under certain circumstances this court will take judicial notice that portions of specific Missouri streams are in fact navigable or nonnavigable. Thus, in State ex rel. Applegate v. Taylor, 224 Mo.

393, 123 S.W. 892, 919, in discussing the navigability of the Chariton River, this court took judicial cognizance that it was nonnavigable; in T. L. Wright Lumber Co. v. Ripley County, 270 Mo. 121, 192 S.W. 996, 999, the court took such notice that the Current River as it flowed near the City of Doniphan was not navigable; and in Slovensky v. O'Reilly, Mo., 233 S.W. 478, the court noted that an Act of 1839 (Laws 1838–39, p. 83) declaring that "All that part of the Merrimac River, in the State of Missouri, lying below the mouth of Crooked Creek, is hereby declared a public highway" but, nevertheless, said of it, loc. cit. 482: "We don't know historically or otherwise of any special commerce which it has carried. Its treachery, as a stream for bathing and canoeing, near St. Louis, is well known, but its navigability up in Crawford County (near the head waters of the stream) will not be judicially noticed." And in Elder v. Delcour, 364 Mo. 835, 269 S.W.2d 17, 23, 47 A.L.R.2d 370, this court held that *under the admitted facts,* the Meramec River, as it flowed in Dent County several miles upstream from the mouth of Crooked Creek, was nonnavigable in the broad sense used in determining title to the bed of a stream. On the other hand, this court in Von Eime v. Fuchs, 320 Mo. 746, 8 S.W.2d 824, 825, in considering an issue of title to land situate in St. Louis County, said of it: "The real estate in controversy is situated on the bank of the Meramec River; the same being an accretion located in a bend of said stream, the river being a navigable stream."

In any event, however, plaintiff does not assert that nonnavigability of the Meramec River at the point in question is a fact of which either the trial court or this court might properly take judicial notice. To the contrary, plaintiff merely states that he adduced evidence to the effect that in the area in question the river was not susceptible of being used in its ordinary condition as a highway in the customary modes of commerce, and that, inasmuch as there was no evidence to the contrary, plaintiff's

undisputed evidence tending to show that the river was nonnavigable establishes its nonnavigability as a matter of law. That contention cannot be upheld.

■ "In order that the stream or body of water be classed as navigable, it need not be navigable in its entirety. In other words, a stream or body of water which is susceptible of being used in its ordinary condition as a highway of commerce may be navigable regardless of whether it admits the passage of boats at all portions thereof, and the general character of a stream as being navigable is not changed by the fact that at a particular place it is not in fact navigable by boats. On the other hand, a stream may be navigable in part and nonnavigable in part and the navigability of one part does not render the stream navigable through its full length, * * *." 65 C.J.S. Navigable Waters § 5 c, p. 51. Navigability of a stream such as the Meramec, especially as it approaches and empties into the admittedly navigable Mississippi River, must be determined by its *capability* of use by the public for purposes of transportation and commerce, rather than the particular extent and manner of that use. 65 C.J.S. Navigable Waters § 6, p. 53; United States v. Appalachian Electric Power Co., 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243. Clearly, plaintiff's evidence, even if believed by the jury, does not compel a finding of nonnavigability; the most that may be said of it is that it would warrant such a finding.

■ Even assuming that defendant offered no evidence to the contrary of that adduced in behalf of the plaintiff, it does not follow that there was no issue of nonnavigability for submission to the jury. The law in this state is that "when the United States surveys its lands along the banks of a nonnavigable river, and has sold and conveyed such lands by subdivision, its patents convey the title to all the lands lying between the meander line and the middle thread of the river, unless previous to the issuance and delivery of such patent

it has also surveyed such lands as government subdivisions or has expressly reserved them when not surveyed." T. L. Wright Lumber Co. v. Ripley County, 270 Mo. 121, 192 S.W. 996, 998. In the instant case, plaintiff did not plead or place in evidence the patent, if any, issued to the land claimed by him, nor did he plead or prove that, prior to the issuance of such patent, if any, the government had not surveyed such land as a government subdivision or expressly reserved it. Actually, plaintiff did not place in evidence any muniment of his title. He merely testified orally: "I own over a mile and a quarter of front there. * * Right across from this Monarch Equipment Company." Following that testimony, a plat of Club City subdivision was offered by plaintiff and admitted in evidence. Thus it is that plaintiff, as his pleading and evidence reflect, elected not to proceed upon any theory of a prior grant of the lands between the shore line and the thread of the stream nor upon any presumption of nonnavigability of the river. Rather did he elect to plead and undertake to prove its nonnavigability as an issue of fact. In this connection, it may be well here further to note that although it is frequently stated that where an issue of navigability is presented the burden of proving "navigability" rests upon the "plaintiff" who asserts it. Sneed v. Weber, Mo.App., 307 S.W.2d 681, 689. That rule, however, has no applicability here. Defendant's answer did not plead and defendant did not submit any finding as to navigability.

■ In this state of the record, defendant, from whom plaintiff sought to recover substantial damages, had the right to rely upon the weakness of plaintiff's case rather than to exploit the strength (or weakness) of its defense. The rule in this situation is thus aptly stated in Cluck v. Abe, 328 Mo. 81, 40 S.W.2d 558, 559: "In a case where the allegations of the petition are denied by the answer, and the plaintiff offers oral evidence tending to support the allegations of the petition, the defendant is entitled to have the jury pass upon the cred-

**158**

ibility of such evidence even though he should offer no evidence himself. The court has no right to tell the jury that it must believe the witnesses. The jury, in the first·instance, is the sole judge of the credibility of the witnesses and of the weight and value of their evidence, and may believe or disbelieve the testimony of any one or all of the witnesses, though such evidence be uncontradicted and unimpeached." See also Dixon v. Edelen, Mo., 300 S.W.2d 469, 472–473; and Robbins v. Robbins, Mo., 328 S.W.2d 552, 556.

Consequently, we are constrained to hold that the trial court did not err in refusing plaintiff's Instruction A.

The judgment is affirmed.

All concur.